Irene GOWETZ et al., Executors,
Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 6107.

United States Court of Appeals
First Circuit.

July 23, 1963.

Irene Gowetz, Worcester, Mass., with whom Duane T. Sargisson and Bowditch, Gowetz & Lane, Worcester, Mass., were on brief, for petitioners.

Arthur E. Strout, Attorney, Department of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attorneys, Department of Justice, were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

The question raised in this petition to review a decision of the Tax Court is what deduction may be made from the gross estate of a Massachusetts decedent because of an obligation to pay alimony

to his former wife.[1] Prior to a divorce the decedent had entered into a separation agreement to pay $500 a month to his wife for life as long as she remained unmarried. It was not expressly stated that the obligation would continue after the husband's death. The ensuing divorce decree did not in terms incorporate the agreement, but notice was taken thereof and no independent financial provision was made for the wife.[2] In the estate tax return the executors, present petitioners, claimed a deduction in a sizable amount because of the future requirements of the agreement. It is conceded that their figure was supported by accepted actuarial tables as being the fair discounted value, as of the date of decedent's death, of an obligation to pay $500 a month to a woman of the former wife's then age for life or until she remarried. At the same time, vis-a-vis the former wife, they denied all liability, and resisted suit in the state court. No Massachusetts case had passed on the precise question and we accept the executors' assertion that they believed in good faith that there was a reasonable possibility that their defense would be successful. During the pendency of that suit the wife remarried. This, of course, terminated any future rights, and in effect reduced the estate's maximum obligation for monthly payments to a much lower figure than the one indicated by the actuarial tables. Thereafter the executors lost the state court suit, Taylor v. Gowetz, 1959, 339 Mass. 294, 158 N. E.2d 677, 75 A.L.R.2d 1079. The Commissioner limited the deduction to the amount actually payable, and the Tax Court sustained that determination.

1. 1954 I.R.C. § 2053(a) " * * * the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
  * * * * *
  "(3) for claims against the estate * * *
  * * * * *
  as are allowable by the laws of the jurisdiction * * * under which the estate is being administered."

2. The government has not contended that the claim is founded on an agreement and

to any extent lacked consideration in money or money's worth. See 1954 I.R.C. §§ 2043(b), 2053(c) (1) (A); Rev.Rul. 60-160, 1960-1 Cum.Bull. 374, modifying E.T. 19, 1946-2 Cum.Bull. 166; cf. Harris v. Commissioner, 1950, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111; McMurtry v. Commissioner, 1 Cir., 1953, 203 F.2d 659. We are not to be taken as ruling that this was a necessary concession.

876

Expressly rejecting the broad arguments the government now urges,[3] the Tax Court stated that the executors' total asserted deduction would have been proper, citing Commissioner v. Maresi, 2 Cir., 1946, 156 F.2d 929, had it not been for the fact that the estate's liability was contested. This uncertainty is regarded as fatal. In its opinion the court distinguished uncontested claims with respect to which the amount eventually payable could be approximated by the use of actuarial tables, and "disputed," "contingent" and "potential" claims not so measurable. It described the present claim prior to the final state court decision as "contingent," but rather than saying that initially the deduction was not allowable because it had not been determined that anything would ever be paid, it concluded that until the state court had acted "[t]he value of the claim for deduction purposes was not reasonably ascertainable."

Although we agree with its result we do not altogether adopt the court's reasoning. We question whether, viewing the claim as of the date of death, its value as a claim was necessarily unascertainable. Even a disputed claim may have a value, to which lawyers who settle cases every day may well testify, fully as measurable as the possible future amounts that may eventually accrue on an uncontested claim. If the court was to rest its decision on ascertainable value we think it would have been more appropriate to point out that the executors failed to ascertain it for the reason that in taking a figure based on actuarial tables only, with no allowance for the fact that liability was contested, they made a totally unrealistic appraisal. Obviously a disputed claim is of less value than one which is uncontested.[4]

The executors are on the horns of a dilemma. If they are correct in saying that Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L. Ed. 647, requires the claim to be valued as of the date of death irrespective of future events,[5] they have failed to prove its then value. If they wish to relax that principle to the extent of looking to subsequent events to eliminate the question of liability, they cannot object to the government's looking at least that far into the future to remove the other uncertainty.

We need decide no more. At the same time we must observe that the executors' basic position appears in conflict with the statutory scheme, which has frequently been construed to encompass after events rather than to require valuation as of the date of death. See, e. g., Commissioner v. State Street Trust Co., 1 Cir., 1942, 128 F.2d 618, 142 A.L.R. 943; Commissioner v. Shively's Estate, 2 Cir., 1960, 276 F.2d 372; Jacobs v. Commissioner, 8 Cir., 1929, 34 F.2d 233, Jacobs v. Lucas, cert. den., 280 U.S. 603, 50 S.Ct. 85, 74 L.Ed. 647; Estate of William P. Metcalf, 1946, 7 T.C. 153, aff'd without opinion, 6 Cir., May 5, 1947. How far into the future it may be appropriate to go we need not determine.

Judgment will be entered affirming the decision of the Tax Court.

3. The government's general approach to unliquidated claims seems andabatarian. We do not find it necesary to pass on it.

4. As the court said in Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647, "[T]he value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market."

5. Ithaca Trust involved the value of a charitable remainder subject to a life estate. The court held that the remainder did not become more valuable, from the standpoint of a deduction from the gross estate, when the life tenant died before reaching her actuarial expectancy.