ESTATE OF DONALD ELBERT LESTER, SR., DECEASED, ROBERT S. COORS, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1920–67.     Filed January 18, 1972.

*Jack O. Brittain,* for the petitioner.
*Bruce A. McArdle,* for the respondent.

OPINION

TIETJENS, *Judge:* All of the facts are stipulated and this case was submitted under Rule 30, Tax Court Rules of Practice. The Commissioner determined a deficiency of $6,490.35 in the Federal estate tax of the Estate of Donald E. Lester. Petitioner's Federal estate tax return (Form 706) was filed with the district director of internal revenue for the New Orleans district, New Orleans, La., on April 28,

---

1964. Due to the concession of petitioner that the value of a life insurance policy issued by Aetna Life Insurance Co. which is includable in the estate is $22,000, the amount of the deficiency remaining in dispute is less than $6,490.35. The sole issue is the proper amount of a deduction otherwise allowable under section 2053 [1] for the claim of Lester's ex-wife against the estate for monthly payments fixed under a decree of divorce.

Donald E. Lester, the decedent, died on February 2, 1963, domiciled in Natchitoches, La., and leaving a holographic will. The executor of the estate is Robert S. Coors, an individual who was a legal resident of Milwaukee, Wis., at the time the petition was filed. He received letters testamentary from the Tenth Judicial District Court for the Parish of Natchitoches.

The decedent divorced his wife Ruth Lester on July 27, 1961, in the Circuit Court of Milwaukee County, Wis. The decree obligated the decedent to make monthly payments to his ex-wife in the following provision:

As and for a further full, final and complete division of estate of the parties, the defendant herein shall be entitled to receive a total sum of One hundred thirty thousand dollars ($130,000.00) to be paid by the plaintiff in the following manner: One thousand dollars ($1,000.00) per month, on the first day of the calendar month, following the date of entry of judgment of divorce, and the further sum of One thousand dollars ($1,000.00) per month on the first day of each calendar month thereafter, for a total period of ten (10) years and ten (10) months, until the full sum of One hundred thirty thousand dollars ($130,000.00) shall have been paid by said plaintiff for the benefit of the defendant. In the event the plaintiff shall predecease the defendant prior to the expiration of the ten (10) year and ten (10) month period hereinabove set forth, the Estate of the plaintiff shall pay the defendant the sum of One thousand dollars ($1,000.00) monthly, following his death, until the death of the defendant, or until the expiration of the original ten (10) year and ten (10) month period, whichever shall first occur.

During his life the decedent made the 19 payments which fell due before February 2, 1963, the date of death. On that date 9 years and 3 months of the term established by the decree remained, and assuming that the ex-wife's death would not have occurred during that interval,

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

Sec. 2053 in pertinent parts provides:

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) for claims against the estate

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

the estate would have been obligated to pay 111 installments of $1,000 monthly to her commencing March 1, 1963. In fact the petitioner did make such payments, and after 14 months' worth totaling $14,000 were disbursed the Federal estate tax return (Form 706) was filed on April 28, 1964.

Ten more installments were completed through February 1, 1965, but on February 22 the Wisconsin court which granted the divorce entered an order styled "Order to Show Cause" upon the stipulation of Ruth Lester, the ex-wife, and Robert Coors, the executor. The court directed Coors to purchase "a Single Premium Immediate Annuity Certain, Non-participating" from a designated insurance company naming Ruth Lester the annuitant and the son and the grandson of the decedent and Ruth Lester as primary and secondary beneficiaries respectively. The order further provided:

4.) That defendant, RUTH A. LESTER, shall have no power of assignment of said policy of insurance, and said defendant further shall have no right to change the beneficiary or beneficiaries on said policy of insurance.

5.) Said policy of insurance shall pay the sum of One thousand dollars ($1,000.00) monthly to the defendant, RUTH A. LESTER, first payment commencing March 1, 1965, and the further sum of One thousand dollars ($1,000.00) on the first day of each calendar month thereafter until the balance of Eighty-seven thousand dollars ($87,000.00) shall have been paid to her in full. In the event the defendant, RUTH A. LESTER, shall die before the balance of Eighty-seven thousand dollars ($87,000.00) shall have been paid to her under said policy of insurance, then and in that event the balance of payments under said policy of insurance shall be made payable to the primary beneficiary or secondary beneficiary, as specified herein and in the policy of insurance.

These terms were intended to and did discharge the estate from future installments and served to liquidate the balance remaining under the original decree of divorce.

Robert Coors purchased the annuity policy at a total cost of $78,700 about March 1, 1965. In the Federal estate tax return filed approximately 10 months earlier the estate claimed a deduction for the ex-wife's claim against the estate in the amount of $111,000 or the face amount of the maximum number of installments due as of the decedent's death under the decree of divorce.

Ruth Lester was born May 18, 1916.

The Commissioner determined an estate tax deficiency of $6,490.35 and explained as follows in the deficiency notice and accompanying statement:

Debts of decedent and mortgages and liens:
Items:

| | Return | Determined |
|---|---|---|
| 2 _____ | $111,000.00 | $92,456.16 |

\*      \*      \*      \*      \*      \*      \*

Item 2: It has been determined that in the computation of the taxable estate the estate is entitled to a deduction for a debt of decedent due to Ruth Myers Lester his divorced wife in the amount of $92,456.16 rather than $111,000.00 as claimed in Schedule K of the return, Form 706. This debt is a settlement payment due decedent's divorced wife under a court decree. The payments still due at date of death of decedent were in the amount of $1,000.00 per month for 9 years and 3 months. The computation of the allowable deduction under the provisions of Federal Estate Tax Regulations section 20.2031–7(a) and (e) follows:

For 9 years from Actuarial Tables for Estate and Gift Tax, Internal Revenue Service Publication No. 11:

$$\frac{N_{47}-N_{56}}{D_{47}} \text{ equals } \frac{2668428-1435810}{168474} \text{ equals } \frac{1232618}{168474} \text{ equals } 7.3164.$$

| | |
|---|---:|
| 7.3164 × ($1,000.00 × 12) × 1.0189 equals | $89,456.16 |
| Add 3 months at $1,000.00 per month | 3,000.00 |
| Total commuted value of this non-interest-bearing debt | 92,456.16 |

The Commissioner contends that the amount of the estate's obligation to the decedent's ex-wife is the commuted value at the date of death of the installments which had not yet become due. He cites *Ithaca Trust Co.* v *United States*, 279 U.S. 151 (1929), as authority. Thus we are referred to section 20.2031–7(a)(1) and (2) and in turn to section 20.2031–7(e), Estate Tax Regs., the latter of which gives instructions concerning the valuation of an interest, an annuity in this case, which "is dependent * * * upon a term certain concurrent with one * * *" life. His computation of the present value at decedent's death, of an annuity of $12,000 per annum based on Example 9 of the pamphlet Actuarial Values for Estate and Gift Tax, I.R.S. Publication No. 11 (rev. 5/59), takes account of the age of the annuitant and of the dual temporal limitations that terminate the obligation upon the death of the ex-wife or the elapse of 10 years and 10 months after the date of the decree of divorce. Since the decedent timely paid 19 installments under the decree, the term of the outstanding obligation for our purposes is 9 years and 3 months, according to the Commissioner.

Petitioner makes three contentions in the alternative: First, that the estate is entitled to deduct the face amount of the installments outstanding at the date of death, or $1,000 multiplied by 111 payments; second, that the allowable deduction is the amount of the installments which accrued and were paid during the administration plus the cost to the estate of the annuity policy substituted for the yet unmatured installments; and last, $96,021.49, which evidently is a figure petitioner arrived at after consulting Table II under section 20.2031–7(f), entitled "Table showing the present worth at 3½ percent of an annuity for a term certain, of an income interest for a term certain, and of a remainder interest postponed for a term certain."

We think these contentions of petitioner have no merit.

The *Ithaca Trust Co.* case indeed establishes the general principle that we must apply, if, as in the case before us, on the date of death the estate's obligation is one which will be satisfied in the future. The use of actuarial tables such as those found in section 20.2031-7, Estate Tax Regs., to ascertain the value of such a claim, especially when it is periodic in nature, has been the administrative and judicial norm for many years. *Estate of Pompeo M. Maresi*, 6 T.C. 582, 586 (1946), affirmed sub nom. *Commissioner* v. *Maresi*, 156 F. 2d 929 (C.A. 2, 1946); *Estate of Francis Browne Grinnell*, 44 B.T.A. 1286, 1288 (1941), modified sub nom. *Commissioner* v. *State Street T. Co.*, 128 F. 2d 618 (C.A. 1, 1942); *Estate of Reginald L. Taylor*, 39 T.C. 371, 374 (1962), affirmed sub nom. *Gowetz* v. *Commissioner*, 320 F. 2d 874 (C.A. 1, 1963); Rev. Rul. 67-304, 1967-2 C.B. 224.

We think there is no reason in this case to go beyond the principle of *Ithaca Trust Co.* v. *United States, supra*—that the value of the judgment in the divorce proceedings is to be determined as of the date of the husband's death by the use of the tables employed here by the Commissioner, which take into consideration the contingency of the wife's death prior to final payment of the installments to become due.

There is no need to go into the effect of events subsequent to the husband's death, i.e., how the estate finally freed itself of a continuing and admitted liability.

Here the validity of the claim is undisputed. The estate acknowledged it in the estate tax return and subsequently made payments thereon. The only question is how the claim should be valued for the purpose of determining the amount of the estate tax deduction. Under *Ithaca Trust Co.* this is to be done as of the time of death. Petitioner cites us to no case or other authority which would show error in the Commissioner's determination and we have found none.

Accordingly, the Commissioner's determination is approved.

*Decision will be entered under Rule 50.*