John A. PROPSTRA, personal representative of the Estate of Arthur E. Price, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

John A. PROPSTRA, personal representative of the Estate of Arthur E. Price, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 80–5424, 80–5430.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 1981.

Decided July 6, 1982.

Ernest J. Brown, Washington, D. C., argued, for United States; Robert A. Bernstein, M. Carr Ferguson, Dept. of Justice, Washington, D. C., on brief.

G. Ben-Horin, Brown & Bain, P. A., Phoenix, Ariz., for Propstra.

Before KENNEDY and BOOCHEVER, Circuit Judges, and EAST,* District Judge.

BOOCHEVER, Circuit Judge.

This case presents two issues regarding the valuation of assets of and claims against an estate for the purposes of computing the value of a taxable estate under the federal estate tax laws. Plaintiff John Propstra, the personal representative of the estate of Arthur E. Price (estate), filed this action to recover an alleged over-assessment of federal estate taxes. The estate argued that (1) it was entitled to discount by fifteen percent the decedent's undivided one-half interest in real estate held as community property when computing the value of decedent's estate, and (2) it properly deducted the full amount of decedent's proportionate share of lien claims against that real estate instead of the lesser amount actually paid in settlement by the estate.

* Honorable William G. East, Senior District Judge for the District of Oregon, sitting by designation.

The district court granted summary judgment for the estate on the former issue and summary judgment for the Government on the latter. We affirm the judgment for the estate and reverse the judgment for the Government.

## FACTS

The facts are uncontroverted. Arthur Price (decedent) died on October 14, 1971. A federal estate tax return was timely filed on behalf of his estate in 1972 and all estate taxes were duly paid. Decedent's wife acted as executrix of the estate until her death in 1975, at which time John Propstra was appointed as her successor.

Decedent's estate consisted primarily of his undivided one-half interest in several parcels of real estate owned by him and his wife as community property. At the time of his death, two parcels were encumbered by liens of the Salt River Valley Water Users' Association (Association) for past due assessments and penalties amounting to $404,846.11, which had been accruing since the 1920's. No portion of these assessments or penalties had ever been paid by the owners of the property. Despite negotiations between the estate and the Association for waiver or reduction of the lien claims, the Association's bylaws denied it the power to adjust the claims, and, at the time of filing, it maintained that the full amount of the debt was past due and owing.

The executrix deducted decedent's one-half share of these liens ($202,423.05) when she computed the value of the estate on the estate tax return. Because she hoped to find some defense to the lien claims, she indicated on the return that the claims were "contested in part." She did so to comply with the tax return instructions requiring that contested claims be designated as such.

On June 4, 1974, twenty-two months after the filing of the estate tax return, an amendment to the Association's bylaws authorized it to settle outstanding claims for

less than the full amount owed. On June 26, 1974, the estate paid the Association $134,826.23 in full satisfaction of its lien claims against the estate.

The parcels of community real property owned by decedent and his wife at the time of his death had an undisputed fair market value of $4,002,000. In calculating the decedent's undivided one-half interest therein, the executrix discounted his proportionate share of this figure by fifteen percent in order to account for the relative unmarketability of an undivided fractional interest in real property.[1]

On June 26, 1975, the Commissioner of Internal Revenue issued the estate a statutory notice of deficiency and later assessed the estate $210,648.52 for unpaid taxes. The additional assessment was based on the Commissioner's determination that (1) the estate was entitled to deduct only the amount actually paid in discharge of the Association's lien claim, and (2) the estate was not entitled to the fifteen percent valuation discount. The estate paid the alleged deficiency and timely filed a claim in the district court for a refund.[2]

Each party appeals the award of partial summary judgment to the other.

## I

### Valuation of Estate's Interest in Undivided Community Property

Because the estate tax is a tax on the privilege of transfering property upon one's death, the property to be valued for estate tax purposes is that which the decedent actually transfers at his death rather than the interest held by the decedent before death or that held by the legatee after death. *Estate of Bright*, 658 F.2d 999, 1001 (5th Cir. 1981) (en banc). *See also Detroit Bank v. United States*, 317 U.S. 329, 332, 63 S.Ct. 297, 298, 87 L.Ed. 304 (1943); *Ithaca Trust Co. v. United States*, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). Both parties

---

1. The executrix reported decedent's interest in the property as $1,700,850 (($4,002,000/2) × .85).

2. Because of various adjustments to the initial assessment of deficiency, the estate sought a refund of $210,485.94.

agree that the property to be valued in the instant case is an undivided one-half interest in several parcels of real estate that decedent and his wife held as community property at the time of his death.[3]

■ The valuation of interests in property for federal tax purposes is a question of fact. *See Ahmanson Foundation v. United States*, 674 F.2d 761, 769 (9th Cir. 1981); *Penn v. Commissioner*, 219 F.2d 18, 20 (9th Cir. 1955); *In re Nathan's Estate*, 166 F.2d 422 (9th Cir. 1948). Summary judgment on such issues may be proper if the party opposing a Rule 56 motion fails to "set forth specific facts" establishing a genuine issue of material fact. Fed.R.Civ.P. 56(e). The movant, however, must still satisfy any burdens of proof that he would bear at trial. *Pierson v. United States*, 527 F.2d 459, 462 (9th Cir. 1975). Upon requesting summary judgment, the estate submitted affidavits from two qualified appraisers, whose testimony showed that the value of an undivided, fractional interest in real property would be less than a proportionate share of the fair market value of the whole. One appraiser estimated the value of the interest in question at $1,639,500; the other made no specific estimate. The Government submitted no countervailing facts regarding the value of the undivided one-half interest in the parcels. Instead, it now argues that, although it failed to tender any evidence that raised a genuine issue of fact, the estate failed to meet its burden of proof. Specifically, the Government contends that, not only must the estate prove the value of the interest if sold separately, but it must also prove that the interests in question were likely to be sold apart from the other undivided one-half interest in the property. The Government argues that, in the absence of such a showing, one can

reasonably assume that the interest held by the estate will ultimately be sold with the other undivided interest[4] and that interest's proportionate share of the market value of the whole will thereby be realized.

■ After considering the language of sections 2031 and 2033 of the Internal Revenue Code of 1954 (I.R.C.) and their accompanying regulations, we are unwilling to impute to Congress an intent to have "unity of ownership" principles apply to property valuations for estate tax purposes. Sections 2031 and 2033 provide that the value of a decedent's gross estate shall include the value of all property to the extent of his interest therein at the time of his death. Treas.Reg. § 20.2031–1(b) defines "value" for the purposes of §§ 2031 and 2033 as "fair market value at the time of decedent's death." It then defines "fair market value" as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." By no means is this language an explicit directive from Congress to apply unity of ownership principles to estate valuations. In comparison, Congress has made explicit its desire to have unity of ownership or family attribution principles apply in other areas of the federal tax law. *See, e.g.*, I.R.C. §§ 267, 318, and 544. In the absence of similarly explicit directives in the estate tax area, we shall not apply these principles when computing the value of assets in the decedent's estate.

■ Furthermore, we see good reason to consider the "willing seller" mentioned in Treas.Reg. § 20.2031–1(b) as a hypothetical seller rather than the estate or any of dece-

---

3. State law determines what property is transferred at death. *See Morgan v. Commissioner*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 585 (1940). Under Arizona law, the community is dissolved at death, *In re Estate of Pfeffer*, 16 Ariz.App. 147, 492 P.2d 27 (1971), each spouse taking an undivided one-half interest in each item of community property. *Greer v. Goesling*, 54 Ariz. 488, 97 P.2d 218, 220 (1939). Consequently, it might be more accurate to

consider the estate's interest upon decedent's death as a tenancy in common rather than a community property interest. However, because the parties agree regarding the nature of the interest to be valued, we do not pursue this distinction.

4. This principle, applied in some areas of tax law, is often referred to as the "unity of ownership" principle.

dent's beneficiaries. *Accord, Estate of Bright*, 658 F.2d at 1005. *See also Rothgery v. United States*, 475 F.2d 591, 594 (Ct.Cl.1973); *United States v. Simmons*, 346 F.2d 213, 217 (5th Cir. 1965); Rev.Rul. 59–60, 1959–1 C.B. 237, *modified* Rev.Rul. 65–193, 1965–2 C.B. 370 *and amplified* Rev.Rul. 77–287, 1977–2 C.B. 319 (establishing factors to consider in valuing stock in closely held corporations for estate tax purposes). Defining fair market value with reference to hypothetical willing-buyers and willing-sellers provides an objective standard by which to measure value. *See Estate of Robinson v. Commissioner*, 69 T.C. 222, 225 (1977). The use of an objective standard avoids the uncertainties that would otherwise be inherent if valuation methods attempted to account for the likelihood that estates, legatees, or heirs would sell their interests together with others who hold undivided interests in the property. Executors will not have to make delicate inquiries into the feelings, attitudes, and anticipated behavior of those holding undivided interests in the property in question.[5] Without an explicit directive from Congress we cannot require executors to make such inquiries.

Case law supports our rejection of the Government's unity of ownership argument. In *Estate of Bright*, the Fifth Circuit, sitting en banc, rejected the same argument on analogous facts. The Government had argued that the proper method of valuation for the estate's one-half interest in a 55% control block of stock was to value the whole block, including a control premium, then to take one-half thereof. The court ruled that the principles of family attribution could not be applied in valuing the fair market value of decedent's undivided one-half interest in the 55% control block, even though the holder of the other undivided one-half interest took control of decedent's interest pursuant to decedent's will. It reasoned that the tax regulations, case law, and important policies all ran against the Government's theory. For example,

> The notion of the "willing seller" as being hypothetical is ... supported by the theory that the estate tax is an excise tax on the transfer of property at death and accordingly that the valuation is to be made as of the moment of death and is to be measured by the interest that passes, as contrasted with the interest held by the decedent before death or the interest held by the legatee after death.... [T]he relationship between Mr. and Mrs. Bright and their stock is an irrelevant, before death fact. Thus, it is clear that the "willing seller" cannot be identified with Mrs. Bright.... Similarly, ... [because] valuation is not determined by the value of the interest in the hands of the legatee, ... the "willing seller" cannot be identified with Mr. Bright as executor or as trustee of the testamentary trust.... It would be strange indeed if the estate tax value of a block of stock would vary depending upon the legatee to whom it was devised.

658 F.2d at 1006.[6]

In *Estate of Lee v. Commissioner*, 69 T.C. 860 (1978), the tax court also rejected the

---

**5.** Not only would these inquiries require highly subjective assessments, but they might well be boundless. In order to determine whom the legatee or heir might collaborate with when selling his or her property interest, one would have to consider all other owners. The unity of ownership inquiry could not end with a consideration of whether the beneficiary's family members own an interest; it would have to consider friends, business partners, investment partners, and others who might be owners of the remaining interest in the property.

**6.** The *Estate of Bright* court distinguished the case before it from those involving real estate because real estate, unlike shares of stock, is

not freely subject to partition. 658 F.2d at 1003 n.4. This dictum is of no significance because the logic that dictates the application of the hypothetical buyer-seller standard to undivided fractional interests in blocks of stock is equally compelling when considering the standard's applicability to undivided fractional interests in real estate. Either Congress intended that "value" be measured in the context of hypothetical willing-sellers or it did not. We have no indication that Congress found the fact that some interests are more readily subject to partition significant with regard to the valuation of interests of property. In any event, the holder of an undivided interest in property

Government's unity of ownership argument. In *Lee*, decedent and her husband held as community property 80% of the common stock of a closely held corporation. Decedent left her undivided one-half interest in stock to her husband. The Government argued that the value of decedent's interest was equal to one-half the value of the aggregate of the spouses' combined interest in the shares, which included an enhanced value for control. The tax court disagreed and held that decedent's interest at the time of death was a minority interest of 40% of the common stock. It opined, "[a]lthough in the aggregate the marital community held a majority interest in the stock . . ., for estate tax valuation purposes each held a separate minority interest." 69 T.C. at 874–75.[7]

■ Because the undisputed evidence indicates that the value of the interest held by the estate was less than that interest's proportionate value of the whole, we affirm the grant of summary judgment in favor of the estate.

## II

## Valuation of Claims against the Estate

Section 2053(a) provides that, in computing the value of the taxable estate, the executrix should deduct "claims against the estate" from the value of the gross estate.[8] In computing this figure, the executrix deducted the full amount of the lien claims owed to the Association at the time of the decedent's death. Because the estate and the Association later compromised these claims, the Government argues that the estate was only entitled to deduct the amount actually paid in settlement of the claims. In other words, it contends that post-death events are relevant when computing the permissible deduction for "claims against the estate" even though the claim was enforceable for a liquidated sum as of the date of death. The district court granted the Government summary judgment on this issue. The estate appeals.

As a preliminary matter we must determine the nature of the lien claims against the estate. The law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims. *See* Treas.Reg. § 20.2053–1(b)(3) ("No deduction may be taken on the basis of a vague or uncertain estimate."). *See also Estate of DuVal v. Commissioner*, 4 T.C. 722 (1945), *aff'd*, 152 F.2d 103 (9th Cir.), *cert. denied*, 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1613 (1946). Less certain is the relevance of post-death events with regard to claims that are certain and enforceable at the time of death.

We first must determine whether the claim was disputed or contested. The Government argues that the estate contest-

---

would have to secure the consent of the owner or owners of the remaining interests before being able to sell as a unit. This factor alone could affect valuation regardless of whether real or personal property is involved. Consequently, the distinction observed by the *Bright* court with regard to the valuation of interests in property is largely irrelevant.

7. The Government cites three cases in support of its unity of ownership theory: *Cutbirth v. United States*, 38 A.F.T.R.2d 76–6271 (N.D. Tex., June 16, 1976); *Dattel v. United States*, 37 A.F.T.R.2d 75–1525 (N.D.Miss., Oct. 29, 1975); and *Blackburn v. United States*, 6 A.F.T. R.2d 60–6146 (S.D.Ind., July 20, 1960). These cases provide unconvincing support for the Government's position. Although all suggest that a fact-finder may apply unity of ownership principles in valuing undivided fractional interests in property, none cites any authority or rationale for that proposition.

8. I.R.C. § 2053(a) provides:

(a) General rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

(1) for funeral expenses,

(2) for administration expenses,

(3) for claims against the estate, and

(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

ed the lien claims, citing the notation "contested in part" on the estate tax return in support of its argument. The estate contends that the notation was irrelevant; because the Association lacked the power to compromise its lien claim against decedent's estate at the time of his death, the claims were certain (that is for a liquidated sum), enforceable, and owing.

■ The executrix for the estate had hoped to find a defense against the Association's lien claims against the estate. This hope was reflected in the notation "contested in part" written next to the deductions taken for these claims on the estate tax form that she filed. The executrix' hopes, however, have no bearing on whether the Association's claims were certain or enforceable. The Government concedes that at the time of decedent's death the Association lacked the authority to settle its claims for less than their full amount. Moreover, the executrix had no legal or factual arguments that would support a challenge to the claims. The estate lacked even a colorable defense against the Association's claims. Consequently, the Association's lien claims were certain and enforceable.

■ This conclusion necessitates an examination of whether post-death events are relevant when computing the permissible deduction for certain and enforceable claims.[9] We rule that, as a matter of law, when claims are for sums certain and are legally enforceable as of the date of death, post-death events are not relevant in computing the permissible deduction.

Neither section 2053(a) nor the tax regulations state on their face whether post-death events are relevant when computing the permissible deduction for certain and enforceable claims against the estate. Nevertheless, we think that various indicia show that Congress intended that post-death events be disregarded when valuing the claims against an estate.[10]

First, we find significance in a change in wording made by Congress when it enacted the Internal Revenue Code of 1954. Predecessors to section 2053 had authorized deductions of the value of only such claims "as are *allowed* by the laws of the jurisdiction ... under which the estate is being administered." *See, e.g.,* Int.Rev.Code of 1939, ch. 3, § 812(b)(3), 53 Stat. 123 (emphasis added). Some courts interpreted this language as meaning that the deduction was only for such claims as were actually paid. *See Commissioner v. Estate of Shively,* 276 F.2d 372, 374 (2d Cir. 1960); *Estate of Metcalf v. Commissioner,* 7 T.C. 153, 160 (1946), *aff'd in unpublished opinion,* 47–2 U.S.Tax Cas. (CCH) ¶ 10,556 (6th Cir. 1947). Consequently, they concluded that post-death events were relevant to the valuation of claims against the estate and that the compromised portion of the claim against the estate "no longer represented an enforceable claim." *Estate of Metcalf,* 7 T.C. at 160. Other courts, however, noted that deductibility was conditioned on a claim's enforceability under local law, and that enforceability was to be determined as of the time of death. *See Smyth v. Erikson,* 221

---

**9.** The commentators have differing opinions regarding this issue. *See, e.g.,* Palmquist, The Estate Tax Deductibility of Unenforced Claims Against a Decedent's Estate, 11 Gonzaga L.Rev. 707 (1976) (post-death events irrelevant); Comment, Estate and Income Tax: Claims Against the Estate and Events Subsequent to Date of Death, 22 UCLA L.Rev. 654 (1975) (post-death events irrelevant); Comment, Effect of Events Subsequent to the Decedent's Death on the Valuation of Claims Against His Estate Under Section 2053 of the Federal Estate Tax, 1972 Ill.L.Forum 770 (post-death events relevant).

**10.** In examining cases that have previously considered this issue, we have found an irrec-

oncilable split in authority. *Compare Commissioner v. Strauss,* 77 F.2d 401, 405 (7th Cir. 1935); *Russell v. United States,* 260 F.Supp. 493, 499 (N.D.Ill.1966); *Winer v. United States,* 153 F.Supp. 941 (S.D.N.Y.1957); *Estate of Lester v. Commissioner,* 57 T.C. 503 (1972) *with Gowetz v. Commissioner,* 320 F.2d 874 (1st Cir. 1963); *Commissioner v. Estate of Shively,* 276 F.2d 372, 374 (2d Cir. 1960); *Estate of Courtney,* 62 T.C. 317 (1974); *Estate of Hagmann v. Commissioner,* 60 T.C. 465 (1973), *aff'd,* 492 F.2d 796 (5th Cir. 1974). Faced with these conflicting views, we have examined the arguments underlying each and conclude that *Strauss, Winer* and their progeny are more persuasive.

F.2d 1, 3 (9th Cir. 1955); *Winer v. United States*, 153 F.Supp. 941, 943 (S.D.N.Y.1957). They reasoned that the use of the term "allowed" "[was] not to be construed as meaning that unless a claim against the estate has been allowed by the state court no deduction therefor will be permitted." *Smyth*, 221 F.2d at 3. These courts reasoned that Congress intended that the phrase be used as a substantive guide delineating those claims (and other estate disbursements) that would be deductible. Specifically, Congress intended the phrase to mean that only claims based on legally recognized and enforceable rights were deductible; claims that were unenforceable because they lacked legal foundation were not deductible, even if actually paid. *See Wolfsen v. Smyth*, 223 F.2d 111 (9th Cir. 1955); *Jones v. United States*, 424 F.Supp. 236 (E.D.Ill.1974). Congress lent support to this latter construction when, in enacting the Internal Revenue Code of 1954, it replaced "allowed" with "allowable." *Accord, Russell v. United States*, 260 F.Supp. 493, 499 (N.D.Ill.1966); Comment, *supra*, 22 UCLA L.Rev. at 670.

Treasury Regulation 20.2053–4 also supports the construction that certain and enforceable claims against the estate should be valued without regard to post-death events. In pertinent part, it provides:

> The amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent *existing at the time of his death*, whether or not then matured, and interest thereon which had accrued at the time of death.... Only claims *enforceable* against the decedent's estate may be deducted.

(emphasis added). Significantly, the regulation designates "the time of death" as the critical reference point. In addition, it

speaks of "enforceable" rather than "enforced" claims. These factors further suggest that post-death events are irrelevant to the computation of certain and enforceable claims against the estate. *Accord, Winer*, 153 F.Supp. at 943. *See also Jacobs v. Commissioner*, 34 F.2d 233, 236–37 (8th Cir.) (McDermott, J., dissenting), *cert. denied*, 280 U.S. 603, 50 S.Ct. 85, 74 L.Ed. 647 (1929).

Finally, our construction is consistent with the teaching of *Ithaca Trust Co. v. United States*, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). In *Ithaca Trust* the Supreme Court considered whether post-death facts should be considered in measuring the value of a charitable gift for the purpose of deducting that value from the gross estate when computing the taxable estate. In holding that post-death events should be ignored, the Court reasoned:

> The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. The estate so far as may be is settled as of the date of the testator's death. The tax is on the act of the testator not on the receipt of property by the legatees. Therefore the value of the thing to be taxed must be estimated as of the time when the act is done.... Tempting as it is to correct uncertain probabilities by the now certain fact, we are of [the] opinion that it cannot be done....

279 U.S. at 155, 49 S.Ct. at 291 (citations omitted).[11] In *Ithaca Trust*, the bequest was not for a liquidated sum; its value depended on the valuation of the use of property for the life of the testator's widow. The fact that she died within six months of the date of the testator's death was held not to be a proper consideration, and her life estate was determined according to mortality tables as of the date of the

---

11. *Ithaca Trust* is arguably distinguishable from the instant case on the grounds that it dealt with charitable bequests, which are deductible from the gross estate pursuant to a statutory section different from that authorizing deductions for claims against the estate. *See Jacobs v. Commissioner*, 34 F.2d 233 (8th Cir.), *cert. denied*, 280 U.S. 603, 50 S.Ct. 85, 74 L.Ed. 647 (1929). This technical distinction, although accurate, fails to explain why deductions for claims against the estate should be computed differently from charitable bequests. The Eighth Circuit, relying on this distinction in *Jacobs*, provided no indication of why Congress would have intended such an anomalous result.

testator's death. In contrast, in the present case the amount of the assessment was fixed as of the date of death. Therefore there is even less reason to look to post-death events.

The Government denies the force of these arguments, and cites to *Jacobs v. Commissioner*, in which the Eighth Circuit construed a predecessor to section 2053(a) as requiring the consideration of post-death events when computing the value of claims against the estate.[12] *Jacobs*, however, is without persuasive force for several reasons. First, *Jacobs* is distinguishable from the instant case. In *Jacobs*, the decedent's will gave his widow a power to elect between two alternatives. Her claim, therefore, was not certain and enforceable; it was contingent. Second, we find the *Jacobs* court's analysis of Congressional intent unconvincing. The Eighth Circuit placed heavy reliance on the fact that "claims against the estate" appeared in the same paragraph as funeral and estate administration expenses.[13] The court reasoned that, because funeral and administration expenses necessarily require consideration of post-death events, Congress must also have intended that post-death events be considered when computing claims against the estate. 34 F.2d at 236. We do not find this convincing evidence of Congressional intent. The same statutory section provides for the deduction of unpaid mortgages (or other indebtedness) on property when the value of the decedent's interest in that property has been included in the value of the gross estate. *See* note 8 *supra*. This amount can be ascertained as of the date of death. *See Commissioner v. Kelly's Estate*, 84 F.2d 958, 963–64 (7th Cir.), *cert. denied*, 299 U.S. 603, 57 S.Ct. 230, 81 L.Ed. 445 (1936). Thus, the contents of section 2053 do not give rise to any inference regarding whether post-death events should be considered when valuing claims against an estate. Moreover, except with regard to matters like funeral and administrative expenses, which by their very nature require valuation after a decedent's death, Congress has been explicit in providing for consideration of post-death events. *See* I.R.C. §§ 2013, 2032, and 2054. Third, *Jacobs* was decided before the change in the Code discussed above, which indicates Congress' most recently expressed intent. Finally, we find the *Jacobs* court's distinction of *Ithaca Trust*, which was decided approximately six months before *Jacobs*, inadequate for reasons already stated. *See* note 11 *supra*. For these reasons, *Jacobs* is of dubious precedential value to our determination of whether post-death events are relevant when computing the value of certain and enforceable claims against the estate.

The Government also relies on Revenue Ruling 60–247.[14] Although revenue rulings are occasionally entitled to weight in the interpretive process, they are not conclusive statements of the law. *See McMartin Industries, Inc. v. Vinal*, 441 F.2d 1274 (8th Cir. 1971); *Macey's Jewelry Corp. v. United States*, 387 F.2d 70, 72 (5th Cir. 1967). A revenue ruling that conflicts with the revenue statutes must be ignored. *Idaho Power Co. v. Commissioner*, 477 F.2d

---

**12.** *Jacobs* has spawned a line of authority supporting the proposition that post-death events must be taken into account when computing the value of certain and enforceable claims against the estate. *See, e.g., Gowetz v. Commissioner*, 320 F.2d at 876; *Estate of Shively*, 276 F.2d at 375; *Estate of Hagmann*, 60 T.C. at 467–69; *Estate of Metcalf*, 7 T.C. at 161; *John Jacobs v. Commissioner*, 34 B.T.A. 594, 596–97 (1936), *remanded on stipulation*, 95 F.2d 1006 (6th Cir. 1938).

**13.** The statute involved in *Jacobs*, section 403(a)(1) of the Revenue Act of 1921, 42 Stat. 279, c. 136, closely resembled the one now before us, I.R.C. § 2053.

**14.** A deduction, for Federal estate tax purposes, will not be allowed for claims against the estate which have not been paid or will not be paid because the creditor waives payment, fails to file his claim within the time limit and under the conditions prescribed by applicable local law, or otherwise fails to enforce payment. An exception is made in cases where the claim may be deemed to have been paid through the payment of a legacy in an amount at least equal to that of the claim.
Rev.Rul. 60–247, 1960–2 C.B. 272.

688, 696 n.10 (9th Cir. 1973), *rev'd on other grounds*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974); *United States v. Eddy Brothers, Inc.*, 291 F.2d 529, 531 (8th Cir. 1961). In issuing Revenue Ruling 60–247, the Commissioner relied extensively on *Jacobs, John Jacobs,* and *Estate of Metcalf,* all of which are unconvincing in their assessment of Congressional intent regarding the relevance of post-death events when computing the value of certain and enforceable claims against an estate. We are not persuaded by a revenue ruling that relies on cases that we find unpersuasive. Moreover, we note that Revenue Ruling 60–247 was disregarded in *Russell v. United States*, 260 F.Supp. 493, 499–500 (N.D.Ill.1966).

Having concluded that section 2053 precludes the consideration of post-death events in computing the value of certain and enforceable claims against an estate, we reverse the summary judgment granted in the Government's favor and remand for further proceedings consistent with this holding.

Affirmed in part. Reversed and remanded in part.