T.C. Memo. 2000-157

UNITED STATES TAX COURT

JAMES H. JAPHET, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JAMES H. JAPHET ENTERPRISES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6509-98, 6510-98.       Filed May 15, 2000.

<u>A. Chris Heinrichs</u>, for petitioners.

<u>Gerald L. Brantley</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioners' income tax as follows:[1]

_____

[1]  These cases were consolidated for trial, briefing, and opinion.

James H. Japhet

| Year | Deficiency |
|------|-----------|
| 1993 | $13,636 |

James H. Japhet Enterprises, Inc.

| FYE Oct. 31 | Deficiency |
|-------------|-----------|
| 1993 | $13,429 |

The sole issue for decision is whether the fair market value of an apartment building petitioner James H. Japhet Enterprises, Inc., sold to its sole shareholder, petitioner James H. Japhet, on August 10, 1993, was $106,000, as petitioners contend; $139,900, as respondent contends; or some other amount. We hold that it was $106,000. As a result of our holding, we conclude that petitioner James H. Japhet did not receive a constructive dividend in 1993 on the sale of the apartment building, and that petitioner James H. Japhet Enterprises, Inc., recognized no gain in fiscal year 1993 on that sale.

References to petitioner are to James H. Japhet. References to petitioner corporation are to James H. Japhet Enterprises, Inc. Section references are to the Internal Revenue Code in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioner and Petitioner Corporation

Petitioner resided in San Antonio, Texas, when he filed his

petition in these cases.  Petitioner corporation had its principal place of business in San Antonio, Texas, during the year in issue and when it filed the petition.  Petitioner is (and was in the year in issue) the president of petitioner corporation.

Petitioner incorporated petitioner corporation in Texas on November 1, 1977.  Petitioner corporation uses the accrual method of accounting.  Petitioner corporation has primarily been involved in the construction and sale of residential real estate since it was formed.

B.   Petitioner Corporation's Sale of the Apartment Building to Petitioner

On August 10, 1993, petitioner corporation sold petitioner a four-unit apartment building (the apartment building) located at 7519 Windsor Oaks, San Antonio, Texas, for $105,465.  Petitioner corporation's adjusted tax basis in the building was $105,465 on the date of sale.  The sale price of the apartment building equaled its value on petitioner corporation's books, computed as follows:

| | |
|---|---|
| Building costs | $126,668 |
| Land costs | + 8,224 |
| Less depreciation | (29,427) |
| Net book value | 105,465 |

Petitioner corporation built the apartment building in 1985. It has two apartments with three bedrooms and two baths, and two apartments with two bedrooms and one bath.  Its exterior walls

are about 19-percent brick.

## OPINION

A.    The Fair Market Value of the Apartment Building

We must decide the fair market value of the apartment building transferred by petitioner corporation to petitioner on August 10, 1993.  Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts.  See United States v. Cartwright, 411 U.S. 546, 551 (1973); Propstra v. United States, 680 F.2d 1248, 1251 (9th Cir. 1982); sec. 20.2031-1(b), Estate Tax Regs.; sec. 25.2512-1, Gift Tax Regs. Respondent contends that the fair market value of the apartment building was $139,900 on August 10, 1993.  Petitioners contend that the fair market value was $106,000.

B.    Expert Witnesses

Both parties relied on expert witnesses.  We may accept or reject expert testimony according to our own judgment, and we may be selective in deciding what parts of an expert's opinion, if any, we accept.  See Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938); Parker v. Commissioner, 86 T.C. 547, 562 (1986). Martyn C. Glen (Glen) and Jack L. Wolff (Wolff) testified for petitioners.  Edwin A. Kurek (Kurek) testified for respondent. The experts agreed that the comparable sales method was the best

method for estimating the value of the apartment building.  Glen and Kurek each used 7600 Windsor Oaks and 7592 Windsor Oaks as comparable properties.  Glen also used 7518 Windsor Oaks as a comparable property.  The sales dates and sales prices of the three comparable properties, and the sales date of the apartment building at issue, were as follows:

| Property | Sales date and price |
|---|---|
| Comparable sales | |
| 7600 Windsor Oaks | May 1993--$140,670 |
| 7592 Windsor Oaks | May 1993--$139,660 |
| 7518 Windsor Oaks | Feb. 1993--$63,000 |
| Apartment building at issue | |
| 7519 Windsor Oaks | Aug. 10, 1993--$105,465 |

The opinions of petitioners' and respondent's experts and the positions of the parties as to the value of the apartment building at issue on August 10, 1993, are as follows:

|  | Comparable sales method | Income method | Cost method | Estimated value |
|---|---|---|---|---|
| Petitioners' returns, petitions, and brief | -- | -- | -- | [1]$106,000 |
| Deficiency notices and answers | -- | -- | -- | 139,900 |
| Petitioners' expert Glen | $106,000 | $104,390 | $106,403 | 106,000 |
| Respondent's expert Kurek | 139,900 | 138,700 | 147,000 | 139,900 |

[1] Petitioners reported on their returns and asserted in the petitions that the fair market value of the apartment building was $105,465. On brief, they contend that its value was $106,000.

C.   Petitioners' Experts

1.   Wolff

Wolff appraised the apartment building in August 1991 for NCNB Bank for refinancing purposes. He estimated that its fair market value was $85,000. He used 7527 Windsor Oaks as a comparable property. 7527 Windsor Oaks had the same size and number of rental units as the apartment building and was sold in January 1991 for $79,000. Wolff testified that the value of the apartment building could reasonably have increased to $106,000 in 1993.

2.   Glen

Glen inspected the apartment building in May 1997. He estimated that its fair market value was $106,000 as of August

10, 1993.

Glen estimated that 7600 Windsor Oaks and 7592 Windsor Oaks were worth more than the apartment building because, for example, the buildings at 7600 Windsor Oaks and 7592 Windsor Oaks both had exterior lighting and a separate, offstreet parking lot with designated parking spaces, and each had a two-door communal entry, which offers more security for tenants. In contrast, the apartment building did not have exterior lighting, had one door to each of its four units, had nose-in parking off the street, and had a significantly smaller parking area than did the parking lots of 7600 Windsor Oaks and 7592 Windsor Oaks. Glen also said that 7600 Windsor Oaks and 7592 Windsor Oaks were worth more because they had larger living areas, two of their four rental units were larger than the rental units in the apartment building, they were 2 years newer than the apartment building, and they had assumable financing.

Glen testified that the average increase in residential property values in San Antonio from 1991 to 1993 was 21 percent. Based on Wolff's estimate that the apartment building was worth $85,000 in 1991, and Glen's estimate that it was worth $106,000 in 1993, the value of the apartment building increased by 24.7 percent. This is consistent with Glen's valuation of the apartment building.

Glen estimated that 7518 Windsor Oaks was worth less than

the apartment building because 7518 Windsor Oaks had 2,768 square feet and the apartment building had 4,409 square feet, a difference of 37 percent.

D.   Respondent's Expert--Kurek

Kurek estimated that the fair market value of the apartment building was $139,900 as of August 10, 1993.  He inspected the property in May 1996 and March 1999.

Kurek testified that 7592 Windsor Oaks and 7600 Windsor Oaks were so similar to the apartment building that no adjustments to their prices were needed.  He testified that the greater aesthetic appeal of the apartment building, as compared to the boxlike appearance of 7600 Windsor Oaks and 7592 Windsor Oaks, offsets the amount of any adjustment for the smaller amount of exterior brick and the smaller area for parking.  Kurek also said that 7518 Windsor Oaks was not comparable to the apartment building because it was only about half the size of the apartment building.

E.   Analysis

We find that Glen's and Wolff's analysis is more reasonable than Kurek's.  Glen estimated that the apartment building at issue was worth substantially more than 7518 Windsor Oaks, which sold for $63,000, because the apartment building at issue was larger.  He estimated that it was worth substantially less than 7600 Windsor Oaks and 7592 Windsor Oaks because the apartment

building was inferior to those buildings in several ways. We believe Glen reasonably adjusted for the differences between the comparable properties and the apartment building. We disagree with Kurek's estimate because he did not adequately consider those differences, and because he did not use 7518 Windsor Oaks as a comparable. Wolff's report is helpful because he estimated in 1991 that the apartment building was worth $85,000, and he testified that it could reasonably have increased in value to $106,000 in 1993.

Respondent contends that Glen's use of 7518 Windsor Oaks as a comparable property caused him to undervalue the apartment building. We disagree that the properties are not comparable. The apartment building and 7518 Windsor Oaks were both built in 1985 and are of identical construction. 7518 Windsor Oaks, 7600 Windsor Oaks, 7592 Windsor Oaks, and the apartment building each have four residential apartments. 7518 Windsor Oaks is much smaller, but Glen considered that difference in estimating the value of the apartment building. Properties need not be the same size to be used as comparables.[2]

Glen subtracted 10 percent from his estimate of the value of the apartment building compared to 7600 Windsor Oaks and 7592

--------

[2] Wolff testified that properties may not be comparable if they vary greatly in size, but he did not state an opinion on whether 7518 Windsor Oaks and the apartment building were comparable.

Windsor Oaks to take into account the fact that those buildings had assumable financing. Respondent contends that Glen undervalued the apartment building because Glen did not compute whether an assumption would be more advantageous than a conventional mortgage, and because Glen did not know the interest rates on the assumable notes on the 7600 Windsor Oaks and 7592 Windsor Oaks properties. We disagree. Glen explained that an assumable mortgage increases the value of a building since a buyer need not qualify for a mortgage, incur substantial closing costs, or provide as large a downpayment as the buyer would if the property had a conventional mortgage. There is nothing persuasive in the record to the contrary. Thus, we accept Glen's analysis on this point.

Respondent contends that Glen's appraisal was defective because he did not estimate how much it would cost to conform the apartment building to the comparable properties. We disagree. The purpose of an appraisal is to estimate the value of a property, not to determine the cost of conforming it to a comparable property.

Based on the foregoing,

Decisions will be entered for petitioners.