James J. MORRISSEY; Alan S. Bercutt, C.P.A.; Diane Fantl, Co-executors of the Estate of Alice Friedlander Kaufman, Deceased, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 99–71013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2001

Filed March 15, 2001

David Duez, Chicago, Illinois, for the petitioners-appellants.

Marion Erickson, Department of Justice, Washington, D.C., for the respondent-appellee.

Before: HUG, NOONAN, and W. FLETCHER, Circuit Judges.

NOONAN, Circuit Judge:

The executors of the Estate of Alice Friedlander Kaufman appeal the judgment of the Tax Court assessing a deficiency of $209,546 against the Estate. We hold that the Tax Court disregarded what should have been dispositive, viz., the price at which stock owned by the Estate had traded between willing and knowledgeable buyers and sellers. Accordingly, we reverse the judgment and remand to the Tax Court for entry of judgment for the Estate.

## BACKGROUND AND PROCEEDINGS

The asset of the Estate to be valued is 46,020 class A shares of Seminole Manufacturing Co. (Seminole). Seminole's sole asset is the stock of Kazoo, a manufacturer of uniforms sold directly to stores and industrial launderers. Kazoo is the largest seller of professional uniforms in a highly competitive business. Seminole's income after taxes ranged from a loss of $5,042,168 in 1991 to a profit of $1,551,209 for 1992 and a profit of $2,570,085 in 1993.

The stock of Seminole at the time of valuation, April 14, 1994, was held as follows:

| Shareholders | Class A Shares | Class B Shares | A | B | A & B |
|---|---|---|---|---|---|
| | | | Ownership Percentages | | |
| Decedent's Estate | 46,020 | — | 21.51 | — | 19.86 |
| A. Max Weitzenhoffer, Jr. | 40,080 | — | 18.73 | — | 17.30 |
| Elizabeth Weitzenhoffer Blass | 35,500 | — | 16.59 | — | 15.32 |
| Clara Weitzenhoffer, trustee of the Clara Weitzenhoffer trust | 31,800 | — | 14.86 | — | 13.72 |
| John Gunzler | 9,600 | 16,400 | .49 | 92.13 | 11.22 |
| Jerome K. Altshuler, either individually or as executor | 12,960 | — | 6.06 | — | 5.59 |
| Edmund M. Hoffman | 10,000 | — | 4.67 | — | 4.32 |
| Decedent and Diane K. Fantl, trustees under will of Julia Kaufman | 7,320 | — | 3.42 | — | 3.16 |
| Jacquelyne Weitzenhoffer Branch | 6,960 | — | 3.25 | — | 3.00 |
| Diane K. Fantl | 5,740 | — | 2.68 | — | 2.48 |
| Frederick W. Reeves | 2,000 | 1,400 | .94 | 7.87 | 1.47 |

| | | | | | |
|---|---|---|---|---|---|
| Rose M. High | 2,600 | — | 1.22 | — | 1.12 |
| James D. High | 2,000 | — | .94 | — | .86 |
| Decedent, trustee of the Josephine Kaufman trust | 960 | — | .45 | — | .41 |
| William J. Threadgill | 400 | — | .19 | — | .17 |
| | 213,940 | 17,800 | 100.00 | 100.00 | 100.00 |

Class B shares owned by a Seminole employee were subject to redemption by the company on termination of the employee's employment. No other restrictions applied to either class. No other distinction existed between the two classes. Voting for directors was noncumulative, as provided by Oklahoma, the state in which Seminole was incorporated. The stock was not publicly traded.

In 1993, A. Max Weitzenhoffer, Jr. (Weitzenhoffer) asked Merrill Lynch to appraise the value of a minority interest. The Merrill Lynch final report was delivered to him on July 5, 1994. However, on March 29, 1994 Merrill Lynch wrote Weitzenhoffer giving its formal opinion that the fair market value of a minority interest was $29.77 per share.

On the basis of this report Weitzenhoffer advised two shareholders that Merrill Lynch set the value at $29.70 per share, and each sold to him at this price. Edmund Hoffman sold him his 10,000 shares on May 12, 1994; Jacquelyne Weitzenhoffer Branch sold him her 6,960 shares on June 16, 1994. Each seller subsequently testified before the Tax Court that the price was fair and that the sale had been under no compulsion.

The Estate filed an estate tax return valuing the stock at $29.77 per share. The Commissioner of Internal Revenue assessed the stock at $70.79 per share and asserted a deficiency based on this amount.

The Estate petitioned the Tax Court for a redetermination, offering the evidence of the sales by Branch and Hoffman as well as the testimony of an expert in business valuation, Bret Tack. The Tax Court rejected the evidence of the two sales on the ground that they were not at arm's length and that they were "not sufficiently similar to the estate's much larger 21.51 percent interest to make their sales price representative of the value of the estate's stock." The Tax Court did not accept the report of the Commissioner's expert except as rebuttal of Tack. The Tax Court itself accepted a number of objections to Tack's valuation and rejected it. The Commissioner had conceded that a 20% discount should be applied to his initial assessment in order to reflect the lack of public marketability, so that the fair market value was $56.50 per share. Apparently accepting the Commissioner's figure as if it enjoyed a presumption of correctness attendant on the Commissioner's assessment of a deficiency, T.C. Rule 142(a), the Tax Court valued the Estate's stock at this figure.

The Estate appeals.

## ANALYSIS

The estate tax is levied not on the property transferred but on the transfer itself. *Young Men's Christian Ass'n v. Davis,* 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558 (1924). "The tax is on the act of the testator not on the receipt of property by the legatees." *Ithaca Trust Co. v. United States,* 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647 (1929). Consequently we look at the value of the property in the decedent's hands at the time of its transfer by death, 26 U.S.C. § 2033, or at the alternative valuation date provided by the statute, 26 U.S.C. § 2032(a). That the tax falls as an excise on the exercise of transfer underlines the point that the value of the transfer is established at that moment; it is not the potential of the property to be realized at a later date.

Fair market value is "the price at which the property would change hands between a willing buyer and a willing sell-

er, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." 26 C.F.R. § 20.2031–1(b). The willing buyer and willing seller are to be postulated, not as a particular named X or Y, but objectively and impersonally. *Estate of McClatchy v. Comm'r*, 147 F.3d 1089, 1094 (9th Cir. 1998); *Propstra v. United States*, 680 F.2d 1248, 1251–52 (9th Cir.1982). As the Tax Court itself has held, the Commissioner cannot "tailor 'hypothetical' so that the willing seller and willing buyer were seen as the particular persons who would most likely undertake the transaction." *Estate of Andrews v. Comm'r*, 79 T.C. 938, 956, 1982 WL 11197 (1982). Actual sales between a willing seller and buyer are evidence of what the hypothetical buyer and seller would agree on. *See Estate of Hall v. Comm'r*, 92 T.C. 312, 336, 1989 WL 10688 (1989); 26 C.F.R. § 20.2031–2(b).

No good reason existed to reject the sales by Branch and Hoffman as evidence of the fair market value of Seminole stock on April 14, 1994. The sales took place close to the valuation date. The sellers were under no compulsion to sell. There was no reason for them to doubt Weitzenhoffer's report of the Merrill Lynch valuation. That the final report was delivered only in July did not undercut the weight of the formal opinion letter written in March. The sellers had no obligation to hire another investment firm to duplicate Merrill Lynch's work.

The Commissioner tries to make something out of the family connections of the sellers with the buyers. They were not especially close. Hoffman had an uncle related by marriage to Weitzenhoffer's uncle; there is no English word to name this relationship. Branch was Weitzenhoffer's first cousin. Each seller testified that there was no intention to make a gift to Weitzenhoffer.

The Commissioner notes that Hoffman was a very successful businessman, so that the Seminole stock may not have meant much to him. People don't get to be very successful in business by treating valuable property carelessly. To be sure, there was a seven cents spread between Merrill Lynch's price and Weitzenhoffer's offer; the resulting difference of $700 and $487.20 were in context de minimis.

The Commissioner also notes that Branch had a misimpression that Seminole still owned a losing facility that it had, in fact, already sold. Nonetheless Branch was rightly aware that a substantial loss had occurred due to this facility in 1991 when no dividends had been paid. Both sellers were aware that dividends had, even in prosperous years, been meager.

■ In holding the sales to be "unrepresentative," the Tax Court made one error of fact, viz., that voting for directors was cumulative, so that the holder of the Estate's share could elect a director. Under Oklahoma law, voting is noncumulative unless the bylaws specify otherwise. Okla. Stat. tit. 18, § 1057. The Tax Court also engaged in the speculation that the Estate stock could be sold to a non-family member and that, to avoid the disruption of family harmony, the family members or Seminole itself would buy out this particular purchaser. The law is clear that assuming that a family-owned corporation will redeem stock to keep ownership in the family violates the rule that the willing buyer and willing seller cannot be made particular. *See Estate of Jung v. Comm'r*, 101 T.C. 412, 437–38, 1993 WL 460544 (1993). The value of the Seminole stock in Alice Friedlander Kaufman's hands at the moment she transferred it by death cannot be determined by imagining a special kind of purchaser for her stock, one positioning himself to gain eventual control or force the family to buy him out.

■ Although the Commissioner's notice of deficiency is presumed correct, the valuation in the notice of deficiency was abandoned by the Commissioner in the Tax Court. Because the Commissioner abandoned the valuation in his notice of deficiency, the Commissioner had the burden of proving whether any deficiency ex-

isted, and, if so, the amount. *Clapp v. Comm'r,* 875 F.2d 1396, 1403 (9th Cir. 1989); *Herbert v. Comm'r,* 377 F.2d 65, 69 (9th Cir.1966). As the Tax Court itself recognized, sales between willing and informed buyers and sellers are evidence of fair market value. *Theophilos v. Comm'r,* 85 F.3d 440, 449 (9th Cir.1996) (quoting *United States v. Cartwright,* 411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973)). Here the sales were good evidence of the fair market value.

The judgment of the Tax Court is REVERSED, and the case is REMANDED to the Tax Court for entry of judgment for the Estate.