ESTATE OF Martha B. WATTS, William
Hubert Lindsey, Jr., Executor,
Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellant.

No. 86–8504.

United States Court of Appeals,
Eleventh Circuit.

Aug. 4, 1987.

Roger M. Olsen, Acting Asst. Atty. Gen.,
Tax Div., Dept. of Justice, Michael L. Paup,
Chief, Appellate Section, Robert A. Bern-
stein, Gayle P. Miller, Washington, D.C.,
for respondent-appellant.

E. Michael Masinter, Howard O. Hunter,
E. Michael Masinter, P.C., Atlanta, Ga., for
petitioner-appellee.

Before HILL and JOHNSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

HILL, Circuit Judge:

## FACTS

Martha B. Watts, the decedent in this case, died on December 7, 1978. At the time of her death, she owned a 15% interest in Rosboro Lumber Company (Rosboro), an Oregon general partnership. As of the date of the decedent's death, Rosboro had been engaged in the wood products industry for over thirty years. It manufactured and sold lumber, plywood, veneer and laminated beams from logs harvested from its own lands and purchased from others. It owned approximately 22,300 acres of timberland, which were located for the most part, in Lane County, Oregon.

The partners in Rosboro consisted primarily of the members of three families. As of the date of the decedent's death there were fourteen general partners comprised of the three original family groups who had operated the partnership since its organization. The partnership agreement provided in relevant part as follows:

¶ 6. ... No partner shall, except with the consent of the other partners, assign, mortgage, pledge, or sell his share in the partnership or in its capital assets or property, or enter into any agreement as a result of which any person shall become interested with him in the partnership, or do any act or make any commitment detrimental to the best interests of the partnership or which would make it difficult or impossible to carry on the ordinary business of the partnership.

....

¶ 9. This partnership shall continue until dissolved by the voluntary action of one or more of the partners. The death of a partner shall not cause the dissolution or termination of this partnership, which shall, in such event, continue as a partnership between the surviving part-

ners and the estate of a deceased partner or partners, by means of the substitution of the legal representative of the estate of the deceased partner, or partners until the deceased partner's estate is closed, and the partnership shall thenceforth be continued as provided in paragraph 14 of the agreement.

....

¶ 14. It is understood that each of the partners will have made provision for a testamentary disposition of their interests in the partnership, so that in the event of a death of any of the partners their respective estates will be represented in due course by trustees or others, who will be authorized to accede to the partnership interests and enable the partnership to be continued without a dissolution or termination ...; and it is agreed that in the event of the death of any partner the surviving partners and the legal representative of the estate of the deceased partner or partners, or the respective heirs or devisees shall either reorganize the partnership and continue the same without dissolution or termination, or the partnership shall be transferred to a corporation to be organized in which the legal representative of the estate or the respective heirs or devisees shall accept the decedent's or decedents' proportionate share or shares as indicated by the profit and loss sharing ratios set out herein of the corporate stock of the corporation in complete discharge of the claims against the partnership and the partners on account of his or her partnership interest.

In accordance with the above agreement, the decedent's will bequeathed her interest in Rosboro Lumber Company to her nephew, William Hubert Lindsey, Jr., as trustee. Her will further provided:

My trustee shall hold said interest as the sole asset in this trust and shall be relieved of any fiduciary duty to sell said interest for the purpose of creating a diversity of investments. My trustee

---

* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa- tion.

shall have no authority to sell said interest except in a transaction in which a majority of the holders of equity interests in said company (or any successor thereof) sell their interests.

On taxpayer's estate tax return, decedent's 15% interest in Rosboro was valued at $2,550,000. After an audit, the Commissioner of Internal Revenue determined that the fair market value of decedent's interest in the partnership was $20,006,000. The Commissioner issued taxpayer a statutory notice of deficiency to that effect, and Ms. Watts' estate brought this action to challenge that determination.

In petitioning the tax court, the taxpayer took the position that decedent's interest in Rosboro should have been valued at $2,000,000. This figure was based on the results of two expert evaluations, both grounded on the notion that Ms. Watts' 15% interest should be valued as a share of Rosboro as a going concern. The Commissioner contended that that fair market value of decedent's interest in Rosboro was $17,728,400.96. This figure was based on Rosboro's liquidation value, *i.e.*, the market value of its underlying assets should the company be liquidated. The Commissioner contended alternatively that, valuing Rosboro as a going concern, Martha Watts' interest in the Rosboro partnership was worth $6,300,000.

The tax court concluded that the value of decedent's partnership interest in Rosboro Lumber Company was $2,550,000. In reaching this conclusion, the tax court rejected the Commissioner's contention that the decedent's interest should be valued in terms of what Rosboro would receive for its assets upon liquidation of the company. The court rejected the Commissioner's approach on the basis of its conclusion that there was no intent on the part of the Rosboro partners to alter the family ownership of Rosboro or to liquidate the company. Thus, there was "no reasonable prospect of liquidation."

In evaluating the going concern value of Rosboro, the tax court explicitly found the expert testimony of the taxpayer to be more persuasive than that of the Commissioner, and concluded that as of decedent's date of death the fair market value of the 15% interest in Rosboro before any discount was $3,933,181. The court then applied a discount of 35%, to take into account the lack of marketability, the fact that the interest was a minority interest, and the restrictions upon transfer or assignment or sale of the interest placed upon it by the partnership agreement. After applying the discount, the tax court determined the value of a 15% interest in Rosboro to be $2,550,000. The Commissioner now appeals.

## DISCUSSION

The valuation of an interest in property for federal tax purposes is a question of fact. *Propstra v. United States*, 680 F.2d 1248 (11th Cir.1982). However, state law determines precisely what property is transferred. *Estate of Bright v. United States*, 658 F.2d 999 (5th Cir.1981); *Morgan v. Commissioner*, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940). Thus, once we have determined that the tax court correctly applied the state law principles governing the definition of the property interest at issue, and the federal law guiding such valuations, the valuation of that interest is subject to a clearly erroneous standard of review.

The treasury regulations governing the estate tax declare that "the value of every item of property includable in a decedent's gross estate ... is its fair market value at the time of the decedent's death." 26 C.F.R. § 20.2031–1. Further, the fair market value of any interest of a decedent in a business, whether a partnership or proprietorship, is the net amount, "which a willing purchaser, whether an individual or a corporation, would pay for the interest to a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts." 26 C.F.R. § 20.2031–3. This net value is to be determined on the basis of all relevant factors. *Id.*

In this case, the Commissioner does not challenge the sufficiency of the evidence or dispute the basic factual data relating to

the intrinsic asset value or the earning power of the Rosboro partnership. Rather, the Commissioner contends that the tax court's decision to value decedent's interest as part of a going concern was erroneous to the extent that the court based its decision on the subjective intent of the other partners to continue operation of the partnership.

It is well-settled that the willing buyer-willing seller test is an objective one, requiring that potential transactions be analyzed from the viewpoint of a hypothetical seller whose only goal is to maximize his profit on the sale of his interest. *Estate of Bright v. United States*, 658 F.2d 999, 105-106 (5th Cir.1981) (en banc). In this regard, the Commissioner is correct in arguing that the actual subjective intention of the Rosboro partners to continue the business rather than liquidate it is irrelevant. *See Estate of Curry v. United States*, 706 F.2d 1424, 1431 (7th Cir.1983). Thus, the tax court erred to the extent that it relied upon the subjective intent of the surviving Rosboro partners in determining that the decedent's interest should be valued as part of a going concern. However, this error does not require a reversal, because the tax court's decision to value decedent's interest as part of a going concern is amply supported by the law governing Oregon partnerships, and the contractual restrictions placed upon Ms. Watts' partnership interest by the partnership agreement governing Rosboro Lumber Company.

First, we note that, "because the estate tax is a tax on the privilege of transferring property upon one's death, the property to be valued for estate tax purposes is that which the decedent actually transfers at his death, rather than the interest held by the decedent before death, or that held by the legatee after death." *Propstra*, 680 F.2d at 1250. [Additional citations omitted]. The Commissioner's argument rests entirely on the notion that the interest transferred at the time of Martha Watt's death was an interest which entitled its holder to dissolve the partnership, and liquidate the company. This is not the case.

■ The government is correct in suggesting that normally, when a partner passes away, the partnership is automatically dissolved. Ore.Rev.Stat. § 68.530(4) (1981). However, dissolution is not the same thing as liquidation. Dissolution is the point at which the partners cease doing business together. Ore.Rev.Stat. § 68.510. Upon dissolution, the partnership is not terminated, but continues until the winding up of partnership affairs. Ore.Rev.Stat. § 68.520. The government is also correct in noting that the withdrawing partner, *unless otherwise agreed*, has the right, upon dissolution, to compel the "winding up" or liquidation of the company, and receive the value of his interest in the partnership. Ore.Rev.Stat. §§ 68.590 and 68.600. *See also Timmermann v. Timmermann*, 272 Or. 613, 538 P.2d 1254.

But that is not the end of our analysis. This rule imposes an obvious hardship upon those partners who may wish to continue the business. In order to circumvent the problem posed by a partner's liquidation right, the Uniform Partnership Act, as adopted in Oregon, allows the partners to incorporate a continuation provision in the partnership agreement. Ore.Rev.Stat. §§ 68.600, 68.590; U.P.A. § 38(1); Crane and Bromberg, *The Law of Partnership*, §§ 83A(c) and 86 (1968). The most common type of continuation agreements are created to avoid the exact contingency present here, *i.e.*, automatic dissolution by virtue of a partner's death. *See* Bromberg, *Partnership Dissolution: Causes, Consequences and Cure*, 43 Tex.L.Rev. 631, 637 (1965).

■ We must now evaluate the impact of these legal doctrines on the interest at issue in this case. The Rosboro Partnership Agreement clearly provided that the death of a partner would not cause dissolution, and that the business would continue upon the death of a partner. Thus, while in the absence of such an agreement the partnership would have dissolved upon Ms. Watts' death, here the interest that passed to her estate was, by terms of the partnership agreement, an interest in an undissolved partnership.

This point is crucial, because the liquidation right, which forms the basis of the Commissioner's claim, is granted only to outgoing partners upon dissolution. *See* Ore.Rev.Stat. § 68.590. No dissolution occurred here. Thus, the interest held by Ms. Watts' estate did not carry with it the liquidation right of Ore.Rev.Stat. § 68.600. We therefore conclude that the tax court was correct, as a matter of law, in determining that the value of Ms. Watts interest in Rosboro could not be ascertained by reference to the value of that interest upon the lumber company's liquidation.[1] This is true not because of the partner's current intent, but because of the legal restrictions placed upon the partners' interest by contract, fully commensurate with Oregon law.[2] *Cf. Hunter v. Straube*, 273 Or. 720, 543 P.2d 278 (1975) (suit to dissolve a three-man partnership by two partners did not entitle them to dissolution where partnership agreement expressly provided that the retirement of any partner would not dissolve the partnership of the remaining partners).

The government's argument may also be interpreted as a challenge to the tax court's evaluation of what Ms. Watts 15% "interest" in Rosboro represented. Thus, we again turn to the law of partnerships in the state of Oregon to determine whether the tax court correctly defined that interest in determining the value of Ms. Watts share.

Section 68.430 of Oregon Revised Statutes defines a partner's "interest in the partnership" as "his share of the profits and surplus...." Where the company is being liquidated, the process of valuation is straightforward. The assets must be determined; a value set upon them; the liabilities of the partnership subtracted; and the remainder divided in a manner proportionate to the respective interests. *See* Ore.Rev.Stat. § 68.620; Comment, *Valuation of Assets on Death of a Partner*, 53 Mich. L.Rev. 972 (1955). However, here we have determined that given the partnership agreement and Oregon law, the assets of Rosboro must be evaluated as assets of a going concern. The government's objection to this reflects their contention that valuation of Rosboro as a going concern does not adequately reflect each partner's interest in the surplus, or partnership assets, because "going concern" value is generally determined on the basis of the company's profits, not on the value of the underlying assets. *Cf. Bynum v. Frisby*, 73 Nev. 145, 311 P.2d 972 (1957) (in action for accounting, dissolving partner entitled to proportionate share of value of assets as well as share of stated profits of company).

▮ A careful examination of all of the expert testimony produced at trial, including the written reports offered by both parties, leads us to conclude that the value of Rosboro's assets was adequately reflected in the figure determined by the tax

---

1. The Commissioner's argument seems to rest on the additional assumption that once the hypothetical purchaser has bought the interest, he can then act to dissolve the partnership, and subsequently require liquidation. However, this contravenes the rule that the interest being valued is that interest passed by the estate, not the subsequent value of that interest in the hands of the purchaser. *See Bright*, 658 F.2d at 1002. Moreover a conveyance or assignment of an interest in a partnership does not cause dissolution. Ore.Rev.Stat. § 68.440. Finally, the liquidation right is only implicated when the dissolution does not take place in contravention of the partnership agreement. Ore.Rev.Stat. § 68.590. Here, the partnership agreements forbids any partner from taking any act "detrimental to the best interest of the partnership." It seems that dissolving in order to liquidate Rosboro may be construed as a "detrimental" act. However, a person holding an interest in a partnership is entitled to the *value* of his inter-

est, even if he can not exercise a liquidation right, Ore.Rev.Stat. § 68.650. This is true of the estate of a deceased partner as well. Ore.Rev. Stat. § 68.640.

2. The Commissioner contends that the tax court must always use the liquidation value, if that figure is greater. However, the cases the Commissioner relies upon in support of this proposition are all related to situations where the interest passed to taxpayer's estate carried with it the power to liquidate the company. *See e.g., Estate of Curry*, 706 F.2d at 1430. Here no such potential exists. Thus, the government's argument rests on hypothetical facts, which may not be considered in establishing fair market value. Indeed, the court in *Curry* noted that the liquidation right may be limited by various legal principles, including a majority shareholder's fiduciary duty to minority stockholders in a closely held corporation. *Id.*

court, to be the fair market value of Ms. Watts 15% interest in the partnership. The controversy centers around the fair market value of the timber and timberlands held by Rosboro. These assets were carried on the books by Rosboro to show a value of 7.9 million dollars in timber and timberlands and 4.9 million dollars in other properties, net of depreciation. This figure represented the actual cost of the properties. The government's assertion that these timberlands are now worth more than $84,000,000 forms the basis of its challenge that the valuation of Ms. Watts interest did not adequately reflect the value of Rosboro's timber assets.

If all of the valuation methods used by the various experts relied upon a book value of $12.8 million dollars as the correct net worth of these assets then the government's argument might have some merit. However, an extremely thorough examination of each expert's evaluation of Rosboro reveals that the estimates took into account the fact that Rosboro's timber assets had greatly appreciated. For example, the report produced by Willamette Management Associates, Inc., offered by the taxpayer, offered several valuations based on the assumption that Rosboro's timber assets had a fair market value greatly in excess of the company's stated book value for those assets.[3] Similarly, the estimate provided by the Commissioner's expert, Management Advisory Services, Inc., gave substantial consideration to the underlying market value of Rosboro's timber holdings. Both valuations applied a concept called the "multiple of timber value approach." By examining comparable publicly-held companies, each expert developed a ratio relating the market value of the company's stock, per share, to the market value of its timber holdings, per share. This price-over-timber-market-value ratio yielded a multiple of between 4.2 and 4.0 for comparable companies. Applying that multiple to the fair market value of Rosboro's timber holdings, if liquidated, produced a publicly-traded equivalent value for Rosboro. This value reflected the long-term nature of the company's timber holdings, and the timber's role as a resource in support of Rosboro's operations.

Another valuation method used by the estate's expert compared the price of stock in similar, publicly held lumber companies, to the book value of those companies. This produced a multiplier representing the price/book value ratio. All of the companies used to produce this multiplier had large timber assets used in the course of normal operations. Applying this price/book value multiplier to Rosboro's book value produced a result strikingly similar to the results obtained using other standard valuation methods, reinforcing the tax court's conclusion that the valuation methods produced reliable results. Therefore, we hold that the valuation methods relied upon by the tax court in arriving at its conclusion adequately reflected the fact that, as a matter of law, Ms. Watts' partnership interest entitled her to the cash value of the underlying assets of the company.[4]

Because the Commissioner does not challenge the tax court's factual findings, including the discount the court applied for lack of marketability, we need not address those issues on appeal. Given that the tax court's decision adequately reflected a correct application of state and federal law in defining and valuing the property interest at stake, we do not have any reason to

---

**3.** By book value, we mean the value of the company based solely on the figures kept on the company's books.

**4.** We reiterate that her entitlement to a share of the assets rests on the valuation of those assets as part of a going concern. The timber held by Rosboro is an inventory asset, used in the company's operations, and not an investment asset held for resale as such. Thus, that portion of Revenue Ruling 59–60, which requires that in computing the book value per share of stock (of a privately held corporation) assets "of the investment type should be revalued on the basis of their market price and the book value adjusted accordingly," does not apply. If the tax court had simply adjusted Rosboro's balance sheet upward by some measure reflecting the fair market value of its timber holdings, then simply divided the result, this would not reflect the true value of an interest in Rosboro as a going concern.

disturb the court's conclusion. Accordingly, the decision of the tax court is

AFFIRMED.