HENRY J. KNOTT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MARION I. KNOTT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Knott v. Commissioner
Docket Nos. 2783-86; 2784-86.
United States Tax Court
T.C. Memo 1988-120; 1988 Tax Ct. Memo LEXIS 148; 55 T.C.M. (CCH) 424; T.C.M. (RIA) 88120; March 21, 1988. Theodore W. Hirsch and Nathan Braverman for the petitioners. Robert A. Miller, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in gift tax for the calendar quarter ended March 31, 1976, and additions to tax as follows: Section 6651(a) [1]
Section 6653(a)
Petitioner
Docket No.
Deficiency
Addition to Tax
Addition to Tax
Henry J. Knott
2783-86
$ 42,662.56
$ 10,665.64
$ 2,133.13
Marion I. Knott
2784-86
41,942.14
10,485.54
2,097.11
The issues we must decide are (1) whether a transfer of partnership interests in Wampler Village Limited Partnership by petitioners to two of their children as of January 1, 1976, resulted in gift tax liability under section 2501(a) and, if so, the amount of the liability; (2) if we find that petitioners are liable for gift tax, whether petitioners' failure to file timely gift tax returns for the calendar quarter ended *150 March 31, 1976, was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a); and (3) whether petitioners' failure to file timely gift tax returns for the calendar quarter ended March 31, 1976, was due to negligence or intentional disregard of rules and regulations pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Henry J. Knott ("H. J. Knott") and Marion I. Knott are husband and wife who resided at Baltimore, Maryland at the time their petitions were filed. Petitioners have 12 children, including Martin G. Knott ("M. G. Knott") and Sarah Lindsay Harris ("Harris"). H. J. Knott was 80 years old at the time of the trial and has spent his entire working life engaged in the construction and real estate development business. His projects have included the construction of houses for sale and apartments for rent. He engaged in this business as a sole proprietor as well as through partnerships and corporations. By 1970, H. J. Knott owned individually or through entities approximately 12 rental apartment projects. Many of the apartment projects that H. J. Knott constructed participated *151 in financing programs administered by the Federal Housing Administration ("FHA") of the Department of Housing and Urban Development, including programs under section 221(d)(4) of the National Housing Act, 12 U.S.C. section 17151(d)(4) (1982). None of H. J. Knott's construction and apartment projects involved the syndication or sale to the public of tax sheltered investments. During the latter part of 1971, H. J. Knott submitted an application to the FHA pursuant to section 221(d)(4) of the National Housing Act for insurance of a mortgage to be obtained to finance the construction of an apartment project to be known as Wampler Village Apartments. H. J. Knott received a commitment from the FHA to insure the mortgage financing on or about January 6, 1972. On or about July 20, 1972, H. J. Knott and Robert J. Romadka entered into an Agreement of Limited Partnership to form Wampler Village Limited Partnership ("Wampler Village" or "Partnership") under the laws of the State of Maryland. Wampler Village's stated purpose was to acquire and build the Wampler Village Apartments on a parcel of land which H. J. Knott owned. H. J. Knott entered into the Partnership *152 with Romadka for two reasons. First, Romadka was an attorney and had been instrumental in convincing the prior owner of the property on which the apartments were to be built to sell it to H. J. Knott. Second, H. J. Knott wanted to acquire another parcel of real property in which Romadka had an interest. The transactions were structured to accomplish this result by allowing an exchange of partnership interests and providing for a conveyance of the real property in a manner that limited transfer taxes. Concurrently with the formation of Wampler Village, H. J. Knott conveyed the real property on which the apartments were to be constructed in exchange for a 99-percent interest as general partner. The property was placed on the Partnership's books at an agreed value of $ 49,500.00. Romadka contributed $ 500.00 cash and became the 1-percent limited partner. On or about August 2, 1972, H. J. Knott and Romadka signed a First Amendment to Agreement of Limited Partnership, modifying the relationship of the partners. Romadka became the general partner with a 56.5-percent interest in partnership profits and losses. H. J. Knott became the limited partner with a 43.5-percent interest in *153 profits and losses. In addition, H. J. Knott became a special limited partner, requiring him to undertake an obligation to advance to Wampler Village all funds needed to proceed with and complete the construction of the Wampler Village Apartments until permanent financing could be obtained. H. J. Knott's equity interest as a special limited partner was to be redeemed with the proceeds of the permanent financing, to the extent available for this purpose, and with cash available for distribution from Wampler Village. Section 25 of the First Amendment to Agreement of Limited Partnership provided for the liquidation of H. J. Knott's interest as special limited partner within 10 years after the completion of the Wampler Village Apartments by paying to H. J. Knott the sum of the following, reduced by any prior distributions in liquidation of H. J. Knott's interest as special limited partner: (1) The then balance in the capital account of Henry J. Knott as Special Limited Partner in the partnership, taking into account any reduction in the said capital account occasioned by any prior distributions to Henry J. Knott as Special Limited Partner pursuant to the provisions of Section 9(f)(1) *154 hereof; (2) An amount of $ 185,000 (or such lesser amount which shall be equal to the Builders and Sponsors Profit and Risk allowance which is or which would be allowed by the FHA if the improvements referred to in this Section were the subject of FHA insured financing on the maximum allowable mortgage under the above referred to commitment, less $ 150,000); (3) all advances or loans, in addition to the capital referred to in (1) above made to the partnership by Henry J. Knott as Special Limited Partner; (4) The release of all letters of credit or guarantees made on behalf of the partnership by Henry J. Knott as Special Limited Partner. * * * On June 8, 1973, H. J. Knott made formal application to the FHA to substitute Wampler Village Limited Partnership as the sponsor of the Wampler Village Apartments project. The project was completed in November 1972 but the formal closing with the FHA did not take place until December 18, 1975, at which time the long term mortgage financing was placed on the property. Prior to obtaining the permanent mortgage, H. J. Knott had advanced to Wampler Village the funds necessary to construct the Wampler Village Apartments. Wampler Village's *155 unaudited balance sheet as of December 31, 1973 reflected the following assets and liabilities: Assets
Cash
$    61,390.00
Accounts Receivable
117.00
Prepaid Expense
61,673.00
Land, Buildings and Maintenance
Equipment Net of Depreciation
2,735,129.00
Total Assets
$ 2,858,309.00
Liabilities
Accrued Interest Payable
$  168,318.00 Tenants' Deposits
39,424.00 Construction Loan *
2,860,352.00 Net Capital Deficiency
(209,785.00)
Total Liabilities
$ 2,858,309.00 As of December 31, 1974, Wampler Village's unaudited balance sheet showed the following: Assets
Cash
$    13,430.00
Accounts Receivable
117.00
Investment
45,287.00
Prepaid Expense
58,075.00
Land, Buildings and Equipment
Net of Depreciation
2,479,691.00
Total Assets
$ 2,596,600.00
Liabilities
Accrued Interest Payable
$ 89,977.00 Tenants' Deposits
38,154.00 Construction Loan *
2,850,352.00 Net Capital Deficiency
(381,883.00)
Total Liabilities
$ 2,596,600.00 *156 On December 17, 1975, a Second Amendment to Agreement of Limited Partnership was executed, transferring a 65-percent interest to M. G. Knott and Harris, two of H. J. Knott's children. As a result of the Amendment the following ownership resulted as of January 1, 1976: General Partners
Henry J. Knott
12 percent
Martin G. Knott
15 percent
Limited Partners
Robert Romadka
23 percent
Sara Lindsay Harris
50 percent
Romadka agreed to exchange his interest as a general partner for one as a limited partner and to reduce his interest in the partnership from 56.5 percent to 23 percent because the partnership was operating at a deficit. H. J. Knott informed him that it was likely he would otherwise have to make additional contributions to capital and H. J. Knott effectively exercised control over Romadka's interest. In exchange for their partnership interests, Harris and M. G. Knott contributed $ 1,550.00 and *157 $ 550.00 in cash, respectively. In addition to their cash contributions, Harris and M. G. Knott were subject to calls for additional capital contributions. Section 8(c) of the Second Amendment to Agreement of Limited Partnership provides, in part, The General Partner may call for additional contributions to capital of the partnership by all of the partners, other than Henry J. Knott as Special Limited Partner, or to Robert J. Romadka, Limited Partner, until such time as the total prior calls to all other partners shall have exceeded $ 200,000 in excess of the total capital, including that additional capital to be contributed pursuant to Section 8(a) hereof [advances by Henry for construction], in proportion to their then interest in partnership profits and losses as provided in Section 9(b)(2) hereof, said additional capital contributions to be credited to the partner's capital account. No Limited Partner on whom such call may be made shall be obligated to satisfy any such call, but if he, or his assignee or successor in interest does not, Section 8(d) hereof shall apply.
Although the contractual language is ambiguous, it appears that either H. J. Knott or M. G. Knott, *158 as general partner, could request additional capital contributions from themselves or Harris. Only H. J. Knott, as special limited partner, and Romadka were exempt from cash calls until prior calls exceeded $ 200,000 in excess of Wampler Village's total capital. As a limited partner, Harris was not obligated to respond to a call for additional capital. If she did not, the remaining partners had several options, including the right to advance such contributions on her behalf to be repaid with interest from her share of distributions from Wampler Village; the right to purchase her interest in Wampler Village or the right to make additional capital contributions and adjust their interests in partnership distributions accordingly. H. J. Knott also remained a special limited partner obligated under the Second Amendment to Agreement of Limited Partnership to advance all funds necessary to complete the construction of the Wampler Village Apartments. Section 25 of the Second Amendment to Agreement of Limited Partnership provides for the liquidation of H. J. Knott's interest as special limited partner in the same manner as did the First Amendment to Agreement of Limited Partnership, *159 supra, except that rather than requiring repayment within 10 years from the completion of construction, the Second Amendment provides for repayment at any time "on or before any liquidation of the partnership assets to any partners." Any funds available for distribution, however, would first go to H. J. Knott to liquidate his interest as special limited partner. Warren Smith, C.P.A., was petitioners' accountant from the early 1950s until his retirement in 1986. Smith prepared petitioners' tax returns and financial statements, represented them in Internal Revenue Service examinations and maintained the regulatory accounting required in connection with FHA programs. In October 1976, Smith was asked to determine the amount due H. J. Knott as special limited partner under the Second Amendment to Agreement of Limited Partnership. After reviewing the Agreement and relative books and records, Smith determined that as of December 31, 1975, Wampler Village was obligated to H. J. Knott pursuant to the Second Amendment to Agreement of Limited Partnership in the amount of $ 402,833.00. Smith sent a letter explaining his calculations to H. J. Knott, H. J. Knott's attorney and the other *160 partners in the Partnership. The partners were thus aware of the commitment of partnership cash flow to H. J. Knott. Approximately two weeks prior to trial, Smith again reviewed Wampler Village's books and records and concluded that the balance due H. J. Knott as special limited partner as of December 31, 1975 was $ 403,397.00. The difference between the figures Smith derived in 1976 and 1987 resulted from adjustments for prior interest accrual treated as a distribution and cash advances that Smith took into account in 1987 but not 1976. We accept the latter figure. [2]
*161 On December 31, 1975, Wampler Village had the following assets and liabilities, as reflected on its Financial Statement Balance Sheet: Assets
Cash
$    97,136.00
Accounts Receivable
45,000.00
Tenant Deposits
45,708.00
Prepaid Expenses
32,116.00
Land and Buildings
Net of Depreciation
(Fixed Assets)
2,224,254.00
Other Assets
24,741.00
Total Assets
$ 2,468,955.00
Liabilities
Accrued Interest Payable
$    21,441.00
Accrued Expenses Payable
5,700.00
Mortgage Payable -- Current
8,416.00
Tenant Deposits
40,293.00
Other Deposits
467.00
Mortgage Payable
3,141,584.00
Total Liabilities
$ 3,217,901.00
Prior to the December 18, 1975, closing on the FHA-insured mortgage financing, H. J. Knott's advances as special limited partner were reflected in Wampler Village's books and records either as loans payable or accounts payable. When the FHA insured mortgage was closed, Smith closed out the loan and accounts payable accounts and transferred the amounts due to H. J. Knott's capital account because of Smith's view of the requirements of FHA regulations. The proceeds of the FHA insured mortgage were not sufficient *162 to repay all of H. J. Knott's advances as special limited partner. Under the FHA insured mortgage financing, Wampler Village was obligated to pay interest at a rate of nine percent per year on a $ 3,141,584.00 note. The total interest payable in 1976 was $ 293,374.00 less a $ 110,250.00 refund of prepaid interest. In 1977, the total interest payable was $ 284,333.00. Although Wampler Village made substantial interest payments on the FHA insured mortgage in 1976 and 1977, it had additional funds available from operations with which to partially redeem H. J. Knott's special interest as special limited partner. The Partnership's Statement of Change in Financial Position for the year ended December 31, 1976 shows the following funds received and applied: FUNDS RECEIVED:
Net Loss
$  (169,815)
Add Changes Not Requiring Funds:
Depreciation
267,096 Funds Provided From Operations
$    97,281 Decrease in Financing Expense-
Noncurrent
658 Capital Contributions - Cash
2,100 Capital Increased by Asset
Re-valuation
126,791 Decrease in Working Capital
133,443 TOTAL FUNDS PROVIDED
$ 360,273
FUNDS APPLIED:
Additions to Fixed Assets -
Purchases
$    25,113 Additions to Fixed Assets -
Re-valuation
126,791 Acquisition of Maintenance Equipment
3,683 Increase in Mortgage Escrow Deposits
19,302 Increase in Reserve for Replacement
14,857 Deposit for [illegible] Indemnification
Fee
55,125 Deduction of Long-Term Debt
8,891 Redemption of Special Limited
Partnership Interest
106,511 TOTAL FUNDS APPLIED
$ 360,273
*163 Petitioners thus had $ 97,281.00 in funds provided from operations as well as sufficient additional funds to pay H. J. Knott $ 106,511.00 in partial redemption of his special limited partnership interest. For 1977, Wampler Village's Statement of Change in Financial Position also indicates that Wampler Village had funds available from operations: FUNDS PROVIDED
Net Loss
$ (235,237)
Add Charges Not Requiring Funds:
Depreciation
286,391 Funds Provided From Operations
$   51,154 Decrease in Prepaid Finance Expense
764 TOTAL FUNDS PROVIDED
$ 51,918
FUNDS APPLIED:
Increase in Mortgage Expense
Deposits
$   12,388 Increase in Reserve for Replacement
13,402 Increase in Fixed Assets
5,289 Reduction of Long-Term Debt
10,384 Increase in Working Capital
10,455 TOTAL FUNDS APPLIED
$ 51,918
The Partnership thus had $ 51,154.00 available in 1977 some of which could have been used to redeem H. J. Knott's special limited partnership interest. As of December 31, 1975, the owner's equity in Wampler Village was expressed on its books *164 as a deficit of $ 748,946.00, representing the amount by which the liabilities of the Partnership exceeded the book value of its assets. On its Federal Partnership Return of Income for the taxable year 1976, Wampler Village elected to increase its basis in its property under section 754 by $ 106,511.00, the amount paid in 1976 to H. J. Knott in partial redemption of his interest as special limited partner. On their Federal income tax return for the taxable year 1976, petitioners reported $ 126,791.00 as gain from the sale or exchange of part of H. J. Knott's interest in Wampler Village to Harris and M. G. Knott. This amount represented $ 20,280.00 realized as the net result of the decrease in H. J. Knott's proportionate share of liabilities, which was treated as a deemed distribution, and $ 106,511.00 in cash distributions made to H. J. Knott in 1976 as special limited partner. Neither H. J. Knott nor Marion I. Knott, who had previously filed gift tax returns, filed gift tax returns on the transfer of partnership interests to Harris or M. G. Knott. Petitioners believed that Wampler Village's liabilities exceeded the value of its assets, and consequently, that the interests transferred *165 had no present value. H. J. Knott generally consulted with his accountant and attorney concerning tax matters when making financial plans. The parties have agreed that for purposes of determining a deficiency in Federal gift tax, if any, the partnership interests are deemed to have been transferred during the first quarter of 1976. On April 25, 1984, petitioners each filed a gift tax return for the first quarter of 1976. The returns showed no gift tax liability but set forth their consent to have gifts made by them during the calendar year 1976, if any, treated as made one half by each of them. William I. Currie, a real estate appraiser and consultant, valued the Wampler Village Apartments property as of December 31, 1975, at H. J. Knott's request. In his report dated January 28, 1987, he concluded, using the income approach to valuation, that the established market value of the property as of December 31, 1975, was between $ 3,000,000.00 and $ 3,300,000.00. Leonard S. Rodwin, an appraiser with the Engineering and Valuation Branch of the Internal Revenue Service, valued the Wampler Village Apartments property as of January 1, 1976. In his report dated March 13, 1985, he concluded, *166 also using the income approach, that the fair market value of the property as of January 1, 1976, was $ 3,580,000.00. The parties have now stipulated that the fair market value of the real property and improvements owned by Wampler Village and shown as "Fixed Assets" on Wampler Village's Financial Statement was $ 3,365,000.00 on December 31, 1975, and at the time of the transfers to Harris and M. G. Knott. Substituting the stipulated fair market value for the depreciated book value of the land and buildings set forth on the December 31, 1975, Financial Statement, supra, and disregarding the Partnership's commitment to liquidate H. J. Knott's interest as special limited partner, the net asset value of Wampler Village was as follows: Assets
Cash
$    97,136.00
Accounts Receivable
45,000.00
Tenant Deposits
45,708.00
Prepaid Expenses
32,116.00
Land and Building
(Fixed Assets)
3,365,000.00
Other Assets
24,741.00
Total Assets
$ 3,609,701.00
Liabilities
Accrued Interest Payable
$    21,441.00
Accrued Expenses Payable
5,700.00
Mortgage Payable -- Current
8,416.00
Tenant Deposits
40,293.00
Other Deposits
467.00
Mortgage Payable
3,141,584.00
Total Liabilities
$ 3,217,901.00
Net Asset Value
$   391,800.00
(Net Amount Available
for Distribution)
*167 Because Wampler Village owed H. J. Knott $ 403,397.00 as of January 1, 1976, if it had been liquidated at that time neither Harris, M. G. Knott nor Romadka would have received any of the proceeds. Respondent issued his notices of deficiency to petitioners on November 27, 1985. Petitioners timely filed their petitions with this Court on January 30, 1986. OPINION Section 2501 imposes a tax on property transferred by gift. When property is transferred for "less than an adequate and full consideration in money or money's worth," the excess of the fair market value of the property over the consideration received is deemed a gift. Section 2512(b). A property's fair market value is the "price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of the relevant facts." Section 25.2512-1, Gift Tax Regs. The valuation of an interest in property for Federal tax purposes is a question of fact. Section 25.2512-3(a), Gift Tax Regs.; Estate of Watts v. Commissioner,823 F.2d 483, 485 (11th Cir. 1987), affg. a Memorandum Opinion of this Court. *168 Petitioners bear the burden of proving that respondent's valuation is wrong. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). The primary issue we must decide is whether H. J. Knott's transfer of interests in Wampler Village to his children gave rise to gift tax liability. Respondent argues that H. J. Knott transferred a 65-percent interest in Wampler Village for less than adequate and full consideration, resulting in a gift in the amount of a fair market value of the interests transferred less the cash paid for those interests. Petitioners argue that H. J. Knott could not have transferred a 65 percent interest to his children because he owned only 43.5 percent of Wampler Village before the transfer and continued to own 12 percent afterward. In any case, petitioners contend that the identity of the transferor is irrelevant because at the time of the transfers, the interests had no value in excess of the consideration paid and obligations assumed by Harris and M. G. Knott on admission to the Partnership. Intrafamily transfers are subject to special scrutiny and are presumed to be gifts. Harwood v. Commissioner,82 T.C. 239, 258 (1984), *169 affd. without published opinion 786 F.2d 1174 (9th Cir. 1986), cert, denied 107 S. Ct. 645 (1986). We believe the evidence shows that H. J. Knott did indeed make gifts to M. G. Knott and Harris, but the value of the gifts was less than determined by respondent. We believe that Romadka was merely a nominee of H. J. Knott and that H. J. Knott transferred the entire 65 percent interest in Wampler Village to M. G. Knott and to Harris. H. J. Knott was at all times in control of the Wampler Village Apartments project. He contributed the land to form the Partnership and advanced the funds necessary to build the apartments. H. J. Knott made Romadka a partner because Romadka had assisted H. J. Knott in acquiring the land for the project and some additional land. If Wampler Village was unable to repay the money H. J. Knott had advanced, Romadka, as the only other partner, had agreed to repay him. In 1975, H. J. Knott informed Romadka that Wampler Village was running short on funds. As a result, H. J. Knott testified, Romadka "took the reduction [in his partnership interest] without any argument." In H. J. Knott's eyes, and in ours, Romadka was a partner of *170 considerably lesser influence in partnership affairs. H. J. Knott determined the interest Romadka would receive and maintain in Wampler Village. H. J. Knott also set the price of M. G. Knott's and Harris' partnership interests. Romadka had to say in the matter. Consequently, although only part of the 65 percent interest was transferred to Harris and M. G. Knott directly through a reduction in L's interest in Wampler Village, he in effect transferred the entire 65 percent interest. In determining the net value of a business, section 25.2512-3(a), Gift Tax Regs., provides factors to consider: (1) A fair appraisal as of the date of the gift of all of the assets of the business, tangible and intangible, including good will; (2) The demonstrated earning capacity of the business; and (3) The other factors set forth in paragraph (f) of § 25.2512-2 relating to the valuation of corporate stock. The "other factors" referred to in subparagraph (3) that are applicable in this case include the economic outlook of the particular industry, the company's management, and the degree of control represented by the interest to be valued. See section 25.2512-2(f), Gift Tax Regs. Respondent *171 presented two expert witnesses in support of his determination that gifts were made of partnership interest. The experts were asked to determine the value as of January 1, 1976, of the partnership interests transferred to Harris and M. G. Knott. Edward A. Bard, a financial analyst with the Internal Revenue Service, valued Wampler Village as an ongoing business. Bard determined the net underlying asset value of Wampler Village by substituting its fair market value for the book value on the 1975 balance sheet and adjusting the capital account to bring the credit side into balance. He then concluded that the value of the 65-percent interest transferred was equal to 65 percent of the underlying asset value. Bard thus valued the transferred interests as follows: 15-percent interest
$  58,500.00
50-percent interest
196,000.00
Total
[3] $ 254,500.00
Although Bard's analysis *172 is appealing in its simplicity, it is seriously flawed. First, Bard's expert report discussed economic factors that might affect a buyer's decision whether to invest in real estate, yet he did not consider these factors in valuing the interests in Wampler Village. Second, rather than valuing the interests transferred separately and applying a minority discount to M. G. Knott's interest if applicable, Bard valued Harris' and M. G. Knott's interests as a controlling interest in Wampler Village because, given the close family relationship, he concluded that they would vote as a block. This Court has held, adopting an en banc opinion of the Fifth Circuit, that a minority interest in a corporation should not be assumed to have any controlling value even though the shareholder's family controls the corporation. Estate of Andrews v. Commissioner,79 T.C. 938 (1982); Estate of Bright v. United States,658 F.2d 999 (5th Cir. 1981) (en banc); accord Propstra v. United States,680 F.2d 1248 (9th Cir. 1982). We can discern no principled reason for a different rule for valuing transfers of partnership interests. The willing buyer-willing seller *173 test is objective. The transfer must be analyzed from the point of view of a hypothetical seller trying to maximize his profit and a hypothetical buyer trying to minimize his cost, neither being compelled to enter into the transaction and each having reasonable knowledge of all of the relevant facts. Estate of Bright v. Commissioner, 658 F.2d at 105-106; see Estate of Watts v. Commissioner,823 F.2d at 485; Wallace v. United States,566 F. Supp. 904 (D. Mass. 1981). Finally, and most tellingly, Bard completely ignored the Partnership Agreement and particularly the provisions for additional capital calls from M. G. Knott and Harris and for priority distributions in liquidation of H. J. Knott's interest as special limited partner. When confronted at trial with these provisions in the Partnership Agreement, Bard admitted that if true, each would require a downward adjustment to his opinion as to the fair market value of the interests transferred to Harris and M. G. Knott. Bard conceded that if Wampler Village's obligation to liquidate H. J. Knott's interest as special limited partner were subtracted from net asset value, the interests *174 transferred to Harris and M. G. Knott would not have any value. We, therefore, reject Bard's analysis. [4]
Respondent's other expert, Mark S. Thompson, valued the partnership interests as if they were to be syndicated and sold as a tax sheltered investment. H. J. Knott, however, testified that he had never been involved in a syndication. Moreover, Thompson conceded that the interests in issue were not appropriate for a public syndication and would more likely be purchased by one or two investors. Thus, without expressing an opinion as to the validity of Thompson's methodology, we find his analysis inappropriate to the facts of this case and decline to follow it. We accept, however, Thompson's conclusion that a 30-percent discount should be applied to each interest transferred to take into account adverse *175 features of limited partnership interests such as illiquidity and lack of control. Petitioners argue that the interests had no value in excess of the consideration given because the amount due H. J. Knott as special limited partner, $ 403,397.00, exceeded $ 391,800.00, the net underlying value of the partnership. Thus, if Wampler Village had been liquidated immediately after the transfers, Harris and M. G. Knott would have received nothing for their interests. Respondent argues that Wampler Village had no intention of liquidating anytime soon and that the liability to H. J. Knott as special limited partner would be paid off prior to liquidation out of partnership earnings. Consequently, respondent argues that the liability should be given little or no consideration in valuing the partnership interests. We agree in part with both parties. Wampler Village was an ongoing business. There is no indication that the partners intend to liquidate Wampler Village and as of the date of the trial, they had not done so. Thus, liquidation value is not an appropriate measure of value in this case. Wampler Village's liability to H. J. Knott, however, is an important factor that a prospective *176 "willing buyer" of a partnership interest would consider, particularly because the other partners could not receive any distributions until H. J. Knott's interest as special limited partner was redeemed. The liability, therefore, would have a materially negative effect on the value of the partnership interests transferred. The parties have stipulated that the value of the Wampler Village Apartments, the major income producing asset of the partnership, was $ 3,365,000.00 at the time the interests in issue were transferred. The parties arrived at that value by using a simplified income approach to valuation. They assumed an annual cash flow for Wampler Village of approximately $ 330,000.00 capitalized at a 10-percent rate. Petitioners argue that after making interest and principal payments on the FHA-insured mortgage indebtedness in 1976 and 1977, there was no remaining cash flow to fund payments to reduce H. J. Knott's special limited partnership interest. Wampler Village paid $ 293,374.00 in interest in 1976 less a $ 110,250.00 refund of prepaid interest. In 1977, the total interest payment was $ 284,333.00. Petitioners contend that there would be no funds available for distribution *177 to the other partners for the entire ten year term for redemption of H. J. Knott's interest as special limited partner provided in the First Amendment to Agreement of Limited Partnership. In addition, M. G. Knott and Harris would be required to make substantial contributions at the end of that ten year term. The financial statements for 1976 and 1977 with which petitioners provided us appear to be incomplete [5] and petitioners have offered us no assistance in analyzing them. Moreover, petitioners have not submitted any financial statements for years subsequent to 1977, which would have enabled us to determine with greater accuracy how quickly Wampler Village was able to repay its obligation to H. J. Knott. Our analysis of the financial information provided indicates that the partnership had cash available from operations in 1976 and 1977 to apply toward the redemption of H. J. Knott's special limited partnership interest. Wampler Village's Statement of *178 Change in Financial Position for the Year Ended December 31, 1976 indicates that Wampler Village had $ 97,281.00 in funds provided from operations. In addition, Wampler Village had sufficient additional funds to enable it to pay H. J. Knott $ 106,511.00 in redemption of his special limited partnership interest. For 1977, the Statement of Changes in Financial Position indicates that Wampler Village had $ 51,154.00 in funds provided from operations. There is nothing in the record to indicate that Wampler Village's financial position changed materially after 1977. We thus infer that Wampler Village continued to have funds available from operations in later years sufficient to redeem H. J. Knott's interest as special limited partner within ten years. We must now determine what effect the payments to H. J. Knott had on the value of the interests transferred. Harris and M. G. Knott received partnership interests in 1976 but had no right to receive distributions from Wampler Village until H. J. Knott's special limited partnership interest was redeemed, which we have found could take ten years. There is no evidence in the record that the value of partnership's principal asset, i.e. *179 , the apartments, would decline or that the net value of Wampler Village could change significantly in ten years. We conclude, therefore, that the aggregate value of the interests Harris and M. G. Knott received in 1976 can be expressed as the right to receive 65 percent of the net underlying asset value of the partnership in ten years. This amount, less a 30-percent discount for illiquidity, appears to be what Harris and M. G. Knott could sell their interests for in 1976. The present discounted value in 1976 of the right to receive the net asset value of Wampler Village in 1986 was $ 151,274.00, applying a ten-percent discount rate over the ten years. [6] The right to receive 65 percent of the net asset value, therefore, had a value of $ 98,328.00. In addition, as we have previously concluded, a 30 percent discount is appropriate to reflect the illiquidity and lack of control inherent in the separate interests transferred. *180 The aggregate value of the interests transferred to Harris and M. G. Knott, therefore, was $ 68,830.00, representing 65 percent of the present discounted value of the $ 391,800.00 net underlying asset value of Wampler Village less a 30 percent discount to reflect the illiquidity and lack of control of the separate interests transferred. Harris' 50-percent interest had a value of $ 52,946.00. M. G. Knott's 15-percent interest had a value of $ 15,844.00. We must next determine what consideration Harris and M. G. Knott gave for their respective interests. Harris paid $ 1,550.00 cash for her 50-percent interest. M. G. Knott paid $ 550.00 cash for his 15-percent interest. In addition, each agreed to contribute additional capital to Wampler Village if needed. Section 8(c) of the Second Amendment to Agreement of Limited Partnership provides that the general partner may make calls for additional capital contributions only to Harris, M. G. Knott and H. J. Knott, in his role as general partner, until such time as the total calls shall have exceeded $ 200,000.00 in excess of the total capital. The partners would be required to make contributions in proportion to their interests in Wampler *181 Village's profits and losses. As of the date of the trial, the general partners had made no additional calls for capital and Harris and M. G. Knott were thus never obligated to pay more than their initial cash contributions for their partnership interests. Given that Wampler Village had sufficient funds to maintain its operations and to redeem H. J. Knott's interest within 10 years, we believe that it was reasonably foreseeabel that Harris and M. G. Knott would not be required to make additional contributions to capital. We, therefore, do not view the cash calls which Harris and M. G. Knott obligated themselves to pay as part of the consideration for the interests transferred. Harris and M. G. Knott thus paid a total of $ 2,100.00 in cash for a 65-percent interest in Wampler Village, which we have determined had a fair market value of $ 68,830.00 at the time of the transfer. In the context of a sale for less than adequate and full consideration, the difference between the fair market value of the interest transferred and the consideration received is deemed to be a gift. Section 2515(b). Petitioners, therefore, are deemed to have made aggregate gifts to their two children *182 of $ 66,730.00 during the first quarter of 1976. Respondent argues that petitioners are liable for additions to tax pursuant to section 6651(a) and section 6653(a). Section 6651(a) imposes an addition to tax for failure to file a return unless the failure is due to reasonable cause and not due to willful neglect. H. J. Knott did not file or cause to be filed gift tax returns because at the time he transferred the interests in Wampler Village to M. G. Knott and Harris, the Partnership's liability to him as special limited partner exceeded its net underlying asset value. Consequently, if Wampler Village had been liquidated immediately after the transfers, M. G. Knott and Harris would have received nothing. H. J. Knott relied on the advice of his accountant and counsel in tax matters. Although we have found the liquidation approach to valuation inappropriate in this case, we do not think that L was unreasonable in taking that position, particularly in light of his reliance on professional advice. We conclude that petitioners' failure to file gift tax returns was due to reasonable cause and not due to willful neglect. Petitioners are thus not liable for the addition to tax under *183 section 6651(a). Section 6653(a) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. We have just concluded that petitioners' position that the interests transferred had no value was a reasonable, albeit incorrect, position. The underpayments of tax, therefore, were not due to negligence and petitioners are not liable for the section 6653(a) addition to tax. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise specified, all section references are to the Internal Revenue Code of 1954 as in effect for the calendar quarter in issue.↩
*. The construction loan represents funds advanced by H. J. Knott.↩
*. The construction loan represents funds advanced by H. J. Knott. As of December 31, 1975, Wampler Village's audited financial statement showed that the deficit in the partners' capital account had increased to $ 748,946.00.↩
2. Respondent argues that petitioners have not established that any amount was owed to H. J. Knott as special limited partner in 1976. Respondent points out that the obligation to H. J. Knott does not appear on the 1975 and 1976 balance sheets. The obligation of the Partnership, however, was in the nature of a commitment to liquidate an equity interest, not in the nature of a debt. The Second Amendment to Agreement of Limited Partnership signed on December 17, 1975, provides for the redemption of H. J. Knott's interest as special limited partner, thus confirming that an obligation existed at that point. The evidence supports the conclusion that the obligation to liquidate H. J. Knott's interest as special limited partner was not satisfied during the second half of December 1975 or during the first quarter of 1976, when the parties have stipulated that the partnership interests were transferred to Harris and M. G. Knott. See infra. Moreover, H. J. Knott's accountant, Warren Smith, adequately explained why the obligation to redeem H. J. Knott's interest as special limited partner did not appear on Wampler Village's financial statements after the closing on the FHA insured mortgage. See infra.↩ We found his testimony credible. We thus conclude that Wampler Village was obligated to repay $ 403,397.00 to H. J. Knott at the time the partnership interests in issue were transferred and that a distribution in liquidation of his interest as special limited partner would be paid prior to any cash distribution to other partners. 3. We have previously determined that the net underlying asset value of Wampler Village as of December 31, 1975, was $ 391,800.00. Sixty-five percent of Wampler Village's net underlying asset value is $ 254,670.00. It is not clear why Bard arrived at a slightly smaller figure. ↩
4. We have previously rejected Bard's expert testimony for failure to consider all relevant facts. See Gillett v. Commissioner,T.C. Memo. 1985-394↩, in which we stated "The most striking fallacy we see in the approach taken by Bard is his failure to take seriously all relevant facts and circumstances as mandated by the regulations and the Code itself." 5. The notes to the Financial Statements for 1976 refer to a financial expense which includes interest on the FHA mortgage. None of the pages of the Financial Statement, however, included a listing for financial expense. ↩
6. Ten percent is an appropriate discount rate because the parties valued the apartment complex using a ten percent capitalization rate. The present discounted value of principal is calculated pursuant to the following formula: Present Discounted Vale = Principal x (1) / (1 + i)<n> Principal = the net asset value, $ 391,800 i = discount rate (10 percent) n = term of years (10) PVD = $ 391,800 x 1 / (1.1)<10> = $ 391,800 x .386 = $ 151,274 See Goldstein v. Commissioner,89 T.C. 535, 548↩ n.19 (1987); D. Thorndike, Compound Interest and Annuity Table at 19 (1982).