ESTATE OF ANN MARIE LENNON, DECEASED, ELIZABETH L. SACHS, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Lennon v. Commissioner
Docket No. 2230-89
United States Tax Court
T.C. Memo 1991-360; 1991 Tax Ct. Memo LEXIS 409; 62 T.C.M. (CCH) 326; T.C.M. (RIA) 91360; August 5, 1991, Filed *409 An appropriate order will be issued and decision will be entered under Rule 155. Steven I. Weissman, for the petitioner. Henry J. Riordan and Frances D. Sheehy, for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION By notice of deficiency, respondent determined a deficiency of $ 453,673 and an addition to tax under section 6651(a)(1) [1] of $ 118,798 in the Federal estate tax liability of decedent Ann Marie Lennon. In an amended answer, respondent increased the deficiency and the addition to tax under section 6651(a)(1) to $ 1,212,098 and $ 254,605, respectively. The primary issue for decision is the date-of-death value of decedent's interest in a multimillion dollar State court judgment. FINDINGS OF FACT Many of the facts have been stipulated and are so found. *410 Decedent died intestate on August 18, 1985. Petitioner Elizabeth L. Sachs (petitioner) was decedent's sister and is the personal representative of decedent's estate. Petitioner resided in Miami, Florida, at the time the petition was filed. In 1983, decedent was employed by Western Steamship Lines, Inc. (Western Steamship), to work on a cruise ship. In October of 1983, while working on one of Western Steamship's cruise ships, decedent became ill. Due to complications of the illness and to decedent's diabetic condition, decedent became comatose. In January of 1984, petitioner, in her capacity as decedent's guardian, entered into a contingent fee agreement with the law association of Goldstein Professional Association (GPA), to represent the decedent in filing a claim and a lawsuit against Western Steamship. Under the terms of the agreement with GPA, GPA was entitled to retain as its fee 40 percent of the total amount recovered from Western Steamship. If the lawsuit resulted in a judgment that was appealed and if the appeal was handled by GPA, GPA was to retain as its fee 50 percent of the total amount recovered from Western Steamship. On May 2, 1984, GPA, on behalf of decedent, *411 filed a complaint against Western Steamship in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida (the circuit court), for the recovery of damages suffered by decedent from the above-mentioned illness. Western Steamship admitted liability for the damages suffered by decedent, leaving the amount of damages as the sole issue to be decided by the circuit court. During the trial in the circuit court, GPA argued that the amount of damages decedent incurred exceeded $ 20 million. Western Steamship argued that the maximum amount of decedent's damages was in the range of $ 4 to $ 6 million. On April 8, 1985, a jury verdict was rendered for the decedent in the amount of $ 7,750,000. Pursuant thereto, the circuit court issued a final judgment ordering Western Steamship to pay decedent $ 7,750,000 plus costs. After the attorneys' contingent fees and costs were paid, decedent would have been entitled to $ 3,706,131 of the $ 7,750,000 total judgment. At the time the judgment was issued by the circuit court, it apparently was one of the largest jury awards in the history of Dade County, Florida. On April 15, 1985, Western Steamship filed a motion for a new *412 trial with the circuit court. On July 2, 1985, the circuit court denied the motion for a new trial. On July 10, 1985, Western Steamship filed a notice of appeal of the circuit court's judgment to the District Court of Appeals in and for the Third District of Florida (the court of appeals). From the time decedent first went into a coma in October of 1983, decedent never regained consciousness. On August 18, 1985, while under medical treatment in Colorado and after Western Steamship's appeal was filed with the appeals court, decedent died. On April 23, 1986, Western Steamship offered petitioner $ 2 million in full settlement of decedent's claim. On the advice and encouragement of GPA, petitioner rejected this offer in anticipation that further negotiations would produce a larger settlement offer. On April 28, 1986, Western Steamship filed its initial brief with the court of appeals. Petitioner filed an answering brief, and Western Steamship then filed its reply brief. On October 10, 1986, 4 days before oral argument was scheduled in the court of appeals, the parties reached a settlement in the total amount of $ 5,250,000. The settlement was approved by the circuit court, and *413 the appeal was dismissed. In late 1986 or early 1987, after GPA was paid its fee (namely, 50-percent share of $ 5,250,000) and after other costs were paid, petitioner received as representative of decedent's estate a net payment under the settlement with Western Steamship of $ 2,456,131. As of the date of decedent's death, Western Steamship was financially able to pay the full amount of the original judgment of the circuit court (namely, $ 7,750,000), but the judgment was not enforceable while on appeal. Throughout 1985 and most of 1986, in consultation with the attorney for decedent's estate (and consistent with his advice), petitioner concluded that the value of decedent's estate did not warrant the filing of a Federal estate tax return. This conclusion was based on the attorney's advice that, as of August 18, 1985, the date of decedent's death, the value of the judgment -- the only significant asset of decedent's estate -- was minimal. The attorney's advice, in turn, was based on the following factors: As of the date of decedent's death, the circuit court's judgment was on appeal; in the attorney's opinion, the circuit court's judgment was likely to be reversed on appeal and *414 the value of the judgment was speculative; the judgment was not enforceable while on appeal; and no settlement offers were pending from the date of the circuit court's judgment through and including the date of decedent's death. In October of 1986, in light of the settlement with Western Steamship, petitioner contacted a certified public accountant to inquire as to whether a Federal estate tax return should at that time be filed. The accountant prepared and on October 17, 1986, filed a Federal estate tax return on behalf of decedent's estate reflecting thereon, after a reduction for attorney's fees but not for other costs, a date-of-death value of $ 1,312,500 for decedent's interest in the judgment of the circuit court against Western Steamship. On Schedule J of decedent's Federal estate tax return, petitioner claimed an estate tax deduction of $ 2,052, relating to expenses of administering decedent's claim against Western Steamship. On Schedule K, petitioner claimed an estate tax deduction of $ 162,516, relating to further expenses associated with the claim against Western Steamship. By notice of deficiency dated November 8, 1988, respondent determined that the date-of-death *415 value of decedent's interest in the circuit court judgment, after a reduction for all attorney's fees and costs, was $ 2,181,196. In his amended answer, respondent determined that the date-of-death value of decedent's interest in the circuit court judgment, after a reduction for all attorney's fees and costs, was $ 3,706,131. OPINION Before addressing the valuation issue, we address certain evidentiary objections concerning the admissibility of evidence that were not ruled on at the trial. Respondent objects on the grounds of relevancy, hearsay, and timeliness to the admission of the transcript of the circuit court trial relating to decedent's lawsuit against Western Steamship. Petitioner offered the transcript into evidence for the sole purpose of showing what transpired at the trial and not for the truth of any of the statements contained therein. We find the transcript to be of marginal relevance and not to be hearsay. Respondent's objection is overruled, and the transcript is admitted. Respondent objects to the admission into evidence of the various briefs filed with the court of appeals on behalf of decedent and Western Steamship on the grounds of relevancy, hearsay, *416 and the alleged status of the briefs as impermissible opinion testimony and expert witness reports. The briefs filed with the court of appeals were offered into evidence by petitioner merely to show arguments that existed and that were being made as to the validity or invalidity of the judgment of the circuit court as of the date of decedent's death and not for the truth of the matters asserted in the briefs. We find the briefs to be relevant, not hearsay, and not opinion testimony nor 8 expert witness reports. We overrule respondent's objections to these documents. Respondent objects to the admission of the testimony and expert witness report of Mallory H. Horton on the grounds that Mr. Horton's testimony and report improperly express opinions of law which are of no assistance to the Court and that they are based on hearsay (namely, the appellate briefs). Mr. Horton's report and testimony do not attempt to determine law, but merely the likelihood, as of the date of death, of the judgment being reversed. Mr. Horton's testimony and report are admitted. Petitioner objects to the admission of all evidence concerning the settlement of the lawsuit and the claim for damages on the *417 grounds that the post date-of-death settlement of the lawsuit and the claim for damages is irrelevant to the date-of-death valuation of the judgment. Petitioner also objects on the grounds that rule 408 of the Federal Rules of Evidence precludes admission of information pertaining to settlements. [2] Any confidentiality that otherwise would have been associated with the fact and amount of the settlement of decedent's claim against Western Steamship was lost when the fact and amount of the settlement were reflected on decedent's Federal estate tax return. Because of that fact and the fact that the amount of the settlement is marginally relevant to the valuation of the judgment, we in our discretion admit the evidence in question pertaining to the settlement of the lawsuit with Western Steamship. *418 For purposes of Federal estate taxes, the value of a gross estate is determined by including the value, as of the date of death, of the decedent's interest in all property. Secs. 2031(a) and 2033. As "brief as is the instant of death, the court must pinpoint its valuation at this instant * * *." United States v. Land, 303 F.2d 170, 172 (5th Cir. 1962). The value of property included in the gross estate is the fair market value of the property on the date of death, defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs.; United States v. Cartwright, 411 U.S. 546, 551, 36 L. Ed. 2d 528, 93 S. Ct. 1713 (1973); Estate of Watts v. Commissioner, 823 F.2d 483, 485 (11th Cir. 1987). The willing buyer and willing seller who are considered in the determination of fair market value are hypothetical, objective participants in a hypothetical sale of the property. Estate of Watts v. Commissioner, supra at 486; Propstra v. United States, 680 F.2d 1248, 1252 (9th Cir. 1982); *419 Estate of Robinson v. Commissioner, 69 T.C. 222, 225 (1977). Valuation is to be based on facts reasonably known at the date of valuation. This Court has adopted the rule that generally "subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation." Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987). Expert reports and testimony admitted to assist in the valuation of property are not binding upon the courts when such evidence is contrary to the courts' own judgment. Helvering v. National Grocery Co., 304 U.S. 282, 295, 82 L. Ed. 1346, 58 S. Ct. 932 (1938); Estate of Hall v. Commissioner, 92 T.C. 312, 338 (1989). At the trial of this case, petitioner called two expert witnesses to testify. Petitioner's first expert witness was a retired State court judge who, for many years since his retirement, has practiced appellate law in Florida. Based on a review of the arguments and authorities set forth in the briefs filed in the court of appeals on behalf of petitioner and Western Steamship, petitioner's first expert witness concluded that there *420 was a 40- to 50-percent risk that the judgment of the circuit court would be reversed on appeal and remanded for a new trial. Petitioner's first witness also opined that, if reversed and remanded on appeal, petitioner's claim would have little or no value. Petitioner's second expert witness was a professional appraiser and valuation expert who specializes in valuing closely held stock and interests in intangible property. Petitioner's second expert witness concluded that the fair market value, as of the date of decedent's death, of the judgment against Western Steamship was $ 750,000. He arrived at the $ 750,000 figure by a combination of two different valuation methods. Both methods considered the pending appeal with its 40-percent risk of reversal (per petitioner's first expert witness) and the lack of liquidity and marketability of the judgment. The first valuation method used by petitioner's second expert witness was described as the "venture capitalist approach," under which a hypothetical investor would expect to earn a return of 8 to 15 times the original investment. After discounting the face amount of the judgment to $ 4,650,000 ($ 7,750,000 times 60 percent) to reflect *421 the perceived 40-percent risk of reversal, the expert divided the adjusted amount of the judgment by 8 to arrive at a figure of $ 581,250, the amount he concluded a hypothetical willing buyer might pay to purchase the judgment in order to receive the necessary minimum return on the investment. The second method of valuation used by petitioner's second expert witness was simply to apply various discount factors to the judgment. The $ 7,750,000 face amount of the judgment was discounted by the risk of reversal on appeal -- the 40-percent discount produced a figure of $ 4,650,000. This $ 4,650,000 figure was then discounted further by 75 percent for the cumulative effect of the lack of liquidity, marketability, and control, and for the restrictive nature of the appeals process -- a 75-percent discount produced a figure of $ 1,162,500. This $ 1,162,500 figure in turn was discounted further to reflect the fact that the appeal process would likely last 2 years during which the investors would not have use of their capital. An 11-percent discount per year for this last factor produced a final, cumulative discounted valuation of the judgment under this valuation method of $ 907,000. *422 Based upon the two figures arrived at under his two valuation methods, petitioner's second expert witness concluded and petitioner argues that as of the date of death the fair market value of the judgment against Western Steamship was $ 750,000, and that, as of the date of death, the fair market value of decedent's interest in the judgment, after reduction for attorney's fees and costs, was $ 210,432. Respondent contends that petitioner's expert witnesses lack experience valuing judgments and that their valuation is flawed because of excessive discounts used in their valuation and because they improperly regarded petitioner's continuing claim and lawsuit against Western Steamship as having little or no value if the $ 7,750,000 judgment was reversed or remanded on appeal. Based in part on the doctrine of collateral estoppel, respondent also argues that the proper date-of-death value of the judgment was its face value of $ 7,750,000 and that the date-of-death value of decedent's interest in the judgment, after reduction for attorney's fees and costs, was $ 3,706,131. In the alternative, respondent argues that the value of the judgment was $ 5,250,000 and that the fair market value *423 of decedent's interest in the judgment was $ 2,181,196. Respondent's alternative valuation is based on the amount actually received under the settlement by petitioner on behalf of decedent's estate, reduced by the attorney's fees, costs, and a 12-percent discount factor for the delay in receiving the funds. Although petitioner's expert witnesses considered many relevant factors, the cumulative discounts applied by petitioner's expert witnesses in valuing the circuit court judgment were, in our opinion, excessive. Petitioner's expert witnesses also failed to adequately consider important factors affecting the date-of-death value of the judgment such as the likelihood of a substantial settlement. They also regarded the judgment as worthless if reversed and remanded on appeal, even though, in our opinion, petitioner's claim for damages on decedent's behalf would have had substantial value on remand. With regard to this latter point, we believe there was a significant likelihood that, if remanded on appeal, petitioner's claim for damages and the related lawsuit pending on decedent's behalf would have been regarded as having been brought under Federal maritime law, under which the *424 recovery would not have been limited to that available under the Florida wrongful death statute. See Evich v. Morris, 819 F.2d 256, 258 (9th Cir. 1987); Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890, 893 (5th Cir. 1984); In re Complaint of Merry Shipping, Inc., 650 F.2d 622, 623-625 (5th Cir. 1981); Favaloro v. S/S Golden Gate, 687 F. Supp. 475, 479-480 (N.D. Cal. 1987). We find respondent's arguments based on collateral estoppel unpersuasive and misdirected. The stipulated issue before us is not whether decedent had a property interest in the judgment, nor is the issue the amount of damages decedent suffered due to Western Steamship's negligence (the issue litigated in the district court), rather it is the date-of-death fair market value of decedent's interest in the judgment. This issue was not determined in the State court proceedings, and collateral estoppel is not applicable. Respondent's alternative argument, based primarily on the settlement amount received by petitioner on behalf of decedent's estate 14 months after the date of death, places undue weight on the settlement. After *425 considering all the facts and circumstances before us, we find that, after reduction for all attorney's fees and costs, the date-of-death fair market value of decedent's interest in the judgment of the circuit court was $ 1,750,000. This represents a substantial discount (namely, 53 percent) from the amount of the $ 3,706,131 in net proceeds decedent would have received (had no appeal been taken) from the gross amount of the $ 7,750,000 circuit court judgment. [3] It also represents a substantial discount (namely, 29 percent) from the amount of the $ 2,456,131 in net proceeds petitioner actually received in late 1986 or in early 1987 upon payment of the amount of the settlement. [4]
We believe $ 1,750,000 for the date-of-death fair market value of decedent's interest in the judgment reflects, among other things, *426 the risk that the circuit court judgment would be modified on appeal and the delay the appeal would cause in the receipt of the award. We so hold. Additions to Tax
Section 6651(a)(1) imposes an addition to tax for failure to timely file tax returns, including Federal estate tax returns, unless the taxpayer shows that such failure was due to "reasonable cause and not due to willful neglect." Section 6018(a) requires the filing of an estate tax return if the gross estate of the decedent exceeds $ 400,000, and section 6075(a) requires estate tax returns required under section 6018(a) to be filed within 9 months after the decedent's death. Reliance on the advice of an attorney that no Federal estate tax return is required to be filed, even when erroneous, may constitute reasonable cause. United States v. Boyle, 469 U.S. 241, 250-251, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985); Estate of Paxton v. Commissioner, 86 T.C. 785, 820 (1986). The Supreme Court stated in Boyle -- When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not *427 competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. * * * [469 U.S. at 251. Emphasis in the original.] In the present case, petitioner consulted the attorney representing decedent's estate and was specifically advised that the value of the estate did not require that a Federal estate tax return be filed. On the facts of this case, we find that petitioner's reliance on the attorney's advice was reasonable cause for the untimely filing of the Federal estate tax return and that petitioner's failure to timely file the Federal estate tax return was not due to willful neglect. Petitioner is not liable for the addition to tax under section 6651(a)(1). An appropriate order will be issued and decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect as of the date of decedent's death, and all Rule references are to the Federal Rules of Evidence.↩
2. Rule 408 of the Federal Rules of Evidence↩ provides in part that "Evidence of * * * accepting * * * a valuable consideration in compromising * * * a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." The rule further provides that "This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations."
3. $ 3,706,131 less $ 1,750,000 equals $ 1,956,131, and $ 1,956,131 represents 53 percent of $ 3,706,131. ↩
4. $ 2,456,131 less $ 1,750,000 equals $ 706,131, and $ 706,131 represents 29 percent of $ 2,456,131.↩